No. 72.—Joshua P. Willis, plaintiff in error, *vs.* The State of Georgia, defendant.

[1.] When a Juror is found by triors to have formed a fixed opinion for or against the prisoner, and entertains it at the time, he is incompetent.

[2.] The meaning of *bias* and *prejudice* in the Act of 1843, defined.

Indictment for Murder, in Decatur Superior Court. Tried before Judge Taylor. October Term, 1852.

Joshua P. Willis was placed upon his trial upon an indictment for the murder of Isaac Dean. John M. Potter, a tales Juror, sworn on his *voire dire,* in answer to the first question prescribed by the Act of 1843, as to formation of an opinion, &c.—replied, that "he had formed no opinion of this offence, but had formed an opinion, though he had not expressed it: that this was an unfavorable opinion of the prisoner, formed from general bad character of the prisoner, who he had known for some time." Counsel for prisoner moved to challenge the Juror for cause, which being overruled by the Court, prisoner excepted.

This Juror being put upon triors, counsel for the prisoner requested the Court to charge the triors, that "if the Juror had formed a fixed opinion, either for or against the prisoner, and still entertained that opinion, he was not free from bias or prejudice, and was therefore an incompetent Juror." The Court declined to give this charge, but gave the triors the usual instructions to examine the Juror, and determine if he stood indifferent.

To this refusal of the Court, counsel for prisoner excepted.

A motion for a new trial, on the ground that the verdict was contrary to the weight of evidence, was urged with zeal in the Supreme Court, but from the view taken of this question by this Court, it is unnecessary to insert here an abstract of the evidence.

H. Morgan & Law, for plaintiff in error.

Solicitor General Lyon, & A. Allen, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

The Juror, John M. Potter, sworn on his *voire dire,* we are clear, was not liable to challenge for cause.    To be so, he must have answered one or both of the questions directed to be propounded to him by the Act of 1843, affirmatively.    That is, he must answer the questions in so many words in the affirmative, or else the answer which he makes must be in its fair meaning and interpretation equivalent to a direct affirmative answer. The first question of the Statute, to wit :  " have you from having seen the crime committed, or having heard any part of the evidence delivered on oath, formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar," was propounded to the Juror.    To which he answered, "that he had formed no opinion of this offence, but had formed an opinion, though he had not expressed it.    That this was an unfavorable opinion of the prisoner, formed from the general bad character of the prisoner, who he had known for some time."    This answer, it will be seen at a glance, does not affirm that the Juror had formed any opinion as to the guilt or innocence of the prisoner of the offence with which he stood charged, but denies that he had formed any opinion as to that offence.    If he had said that he had formed an opinion as to his guilt or innocence, to disqualify him under the Statute, he must have gone farther, and answered, that he had *expressed* that opinion ; and farther, he must have answered, that the opinion so formed and expressed, was founded on his having seen the crime committed, or on his having heard any part of the evidence delivered on oath. All that the Juror does say is, that he had formed, without expressing it, an unfavorable opinion of the prisoner, from his general bad character, who he had known for some time.  The Court therefore did not err in denying the motion to challenge the Juror for cause, but properly ordered the other question to be propounded.

[1.] The Court holding that the Juror had so answered the questions of the Statute as to make him competent, triors were demanded, and the counsel for prisoner requested the Court to instruct them "that if the Juror had formed a fixed opinion, either for or against the prisoner, and still entertained that opinion, he was not free from bias or prejudice, and was therefore an incompetent Juror. This request, the Court declined to give, and the prisoner, through his counsel excepted. The question then is, whether the formation and entertaining of a fixed opinion, either for or against the prisoner, will disqualify the Juror. We now rule for the first time that it will. The Act of 1843, provides that if the Juror when sworn on his *voire dire,* shall so answer the two questions directed to be propounded to him therein, as to make him a competent Juror, the State or the prisoner shall nevertheless have the right to put him upon his trial in the manner pointed out by law, and prove him incompetent. *Cobb's New Dig.* 843. This declares the right of trial as to competency, notwithstanding he may be adjudged competent according to the tests prescribed by the Statute. This trial is to be "in the manner pointed out by law," that is, before triors, according to the course of the Common Law. Without adverting to the rules and precedents of the Common Law, we are clear that if a Juror is found by triors to have formed a fixed opinion, either for or against the prisoner, and still (that is, at the time of the trial) entertains that opinion, he is an incompetent Juror, according to the tests of competency prescribed by the Act of 1843. The second question propounded by the authority of the Act of '43, the Juror having answered the first negatively, is this, " have you any prejudice or bias resting on your mind, for or against the prisoner at the bar?" If it is answered affirmatively, the Juror is incompetent, and such answer is sufficient ground for a challenge for cause. Clearly then, the Statute intends to say, that bias or prejudice resting on the mind of the Juror, either for or against the prisoner, is a disqualification. And it is to be noted that whilst by this Act, an affirmative answer, to be judged of by the Court, is conclusive as to incompetency, a negative answer is not conclusive as to competency.

For, if by his answers, the Court shall hold him competent and not liable to a challenge for cause, *nevertheless,* either party has the right to subject him to trial, and prove him incompetent. So extremely careful is the law to provide for the trial of criminals an impartial Jury. The law considers that, although by the Juror's answers, he may appear to be impartial, and although he may with entire honesty believe that no bias or prejudice rests upon his mind, either for or against the prisoner, yet in point of fact, he may not be impartial, and bias or prejudice may rest upon his mind. Nor is it to be considered as any disparagement of the *bona fides* of the Juror, that he should be returned by his triors incompetent; after he has answered on his oath, that he has no bias or prejudice resting upon his mind. This is to be expected, on account of the various and often imperfect comprehension which men have of the meaning of bias and prejudice. This various understanding of these words, among the plain men who sit in our Jury boxes upon the trial of criminals, is not a matter to be censured, or a matter of admiration, for among lawyers it cannot be affirmed that they have any very precise settled meaning. In the case of *Hudgins vs. The State,* we decided that the answer of a Juror upon his *voire dire* to the first question of the Act of '43, that he had *formed an opinion from rumor,* did not disqualify him. 7 Geo. R. 173. That was plainly not an affirmative response to the question, and the ruling in that case, is still perfectly satisfactory. This case is different. It does not originate upon the questions propounded under the Statute, but upon instructions asked for the triors, and the inquiry now is the same that it would be, if the triors had reported the Juror incompetent, because he had formed a fixed opinion, and still entertained it, for or against the prisoner. The inquiry now is, would the finding by the triors, that the Juror had formed, and still entertained a fixed opinion as to the guilt or innocence of the prisoner, disqualify him ? Besides, the ground of disqualification is different. There it was the *formation of an opinion from rumor*—here, it is *the formation and still entertaining a fixed opinion.* The formation of an opinion from rumor, may be presumed to leave the mind of the Juror

open to conviction, upon hearing the evidence ; it is not irreconcileable with the idea that he, an honest man, called to act upon oath, may still stand indifferent between the State and the prisoner.    For it is a common sentiment among mankind, that rumor is a very unreliable foundation for opinion—a species of evidence which we expect to give way before authentic testimony. No man, I apprehend, feels himself committed to opinions having no more reliable foundation than rumor ; and no sensible man could feel any sense of humiliation for abandoning such an opinion.    But can these things be predicated of a *fixed* opinion, declared to be at the time of trial entertained, and upon what based unknown?    Certainly not, with the same certainty.    In *Hudgins vs. the State,* Judge *Lumpkin* expresses a doubt whether the mere formation of an opinion might not authorize a finding of incompetency by triors.    He says, "I will not undertake to say that a case might not occur when upon putting a Juror upon triors, they might not be justified in returning him incompetent *alone* upon the *formation* of his opinion."

[2.] I have stated that the Statute makes bias or prejudice resting on the mind of a Juror, for or against the prisoner, a disqualification, and it remains only therefore to inquire, in order to settle the the question being considered, whether, when a man has formed a fixed opinion and still entertains it, he is not to be considered as one upon whose mind there rests a bias or prejudice.    A preliminary inquiry however, is, what is meant in the Statute by bias, and what by prejudice?    Without being critical, it may suffice to say, that a prejudice is a *pre-judgment.*    This is the meaning which the roots of the word indicate, and this is the statutory meaning, I have no doubt.    The popular meaning, I apprehend, is not precisely that.    That meaning, I think, involves some grudge or ill will, as well as a pre-conceived opinion.    So I believe the most of Jurors understand it.    And hence it is, that although they may have formed an opinion, yet entertaining no grudge towards a prisoner, and feeling no ill will towards him, they answer that there is no prejudice resting on their minds.    A disqualifying prejudice, then, is a judgment or opinion, as to

Willis *vs.* The State.

the guilt or innocence of a criminal of the crime with which he is charged, no matter how attained.

It ought to be a *fixed* opinion—a present conviction of the mind—not an indistinct floating impression. *Bias* is not synonymous with prejudice; and by the use of this word, the Legislature intended to describe another and somewhat different ground of disqualification. A man cannot be prejudiced against another, without being biased against him; but he may be biased without being prejudiced. I find no definition of bias, more satisfactory than the following, by *Bouvier :* " A particular influential power, which sways the judgment; the inclination of the mind towards a particular object." It is not to be supposed that the Legislature expected to secure in the Juror, a state of mind absolutely free from all inclination to one side or the other. This would be expecting what in many instances could not be attained. But they did intend to exclude from the Jury box, every man who could not bring to the hearing of the case a mind fully open to any conviction which evidence might produce; a moral and intellectual capacity to decide according to the evidence delivered upon oath. I cannot say that such capacity may not exist when there is some leaning, before the evidence is heard, to the one side or the other. Practical tests were what it was the purpose of the Legislature to apply. And they have declared, according to the views thus given of bias and prejudice, that if a Juror has formed a judgment for or against the prisoner, before the evidence is heard on the trial, and entertains that judgment at the trial, he shall not try his cause; and farther, that if he is under such an influence, as so sways his mind to the one side or the other, as to prevent his deciding the cause according to the evidence, that then also he is incompetent. Whether such disqualifying causes exist is for triors to determine, when a Juror is put upon trial. We are satisfied that if it is found by the triors, that a Juror has formed a *fixed* opinion for or against the prisoner, and has not abandoned, but still retains it, the evidence is plenary that in his case those disqualifying causes do exist, and he is therefore incompetent. If he has formed and entertains a fixed opinion as to

VOL. XII 57

the guilt or innocence of the prisoner, he has *prejudged* his case, and *prejudice* rests upon his mind; and he is under such an influence as so sways his mind to the one side or the other as to prevent his deciding the cause according to the evidence, and *bias* rests upon his mind.

A motion for a new trial was made, upon the ground that the verdict was against the evidence. Whether the evidence warranted the verdict or not, we are free to say, is questionable ; but as there was some evidence of the prisoner's guilt, we shall not disturb it on this ground. (See our decisions, *passim.*)

Let the judgment be reversed.