[Filed January 11, 1892.]

## JULIUS KUMLI *v.* THE SOUTHERN PACIFIC CO.

JUROR—FIXED OPINION—TRIAL OF CHALLENGE.— If a person called as a juror have a fixed and definite opinion in the case on the merits, and nothing further be shown, he should, as a matter of law, be rejected as incompetent; but otherwise his competency is a question for the trial court in the exercise of a sound discretion; and before its decision can be set aside on appeal, it must be made clearly to appear that upon the evidence the court ought to have found that the juror had formed such an opinion that he could not in law be deemed impartial.

EXCESSIVE DAMAGES—SETTING ASIDE VERDICT.—Where the verdict of a jury gives excessive damages, it is the duty of the trial court to set it aside, but its refusal to do so cannot be reviewed on appeal. *Nelson* v. *O. R. & N. Co.* 13 Or. 141, and *McQuaid* v. *P. & V. R. R. Co.* 19 Or. 535, followed and approved.

Marion county: R. P. BOISE, Judge.

Defendant appeals. Affirmed.

*E. C. Bronaugh,* for Appellant.

*Tilmon Ford,* for Respondent.

BEAN, J.—This is an action to recover damages for injuries alleged to have been received by plaintiff while a passenger on one of defendant's passenger trains which was wrecked by the falling of the bridge or trestle-work across the marsh known as Lake Labish, in Marion county, in November, 1890. The trial resulted in a verdict and judgment in favor of plaintiff for the sum of fifteen hundred dollars, from which defendant appeals, assigning as error the action of the court in overruling its challenge for actual bias, to the jurors Kennedy, Harriott, Cooley, and Iler, and in refusing to set aside the verdict of the jury, because it is so excessive, and

so disproportionate to the amount of plaintiff's injury as to indicate passion or prejudice on the part of the jury. These assignments of error will be noticed in the order indicated.

1. As to the overruling of the challenge to the jurors: It is unnecessary to state the facts, as disclosed by the examination of any of the jurors, on their *voir dire*, except the juror Iler, whose examination presents as strong a case for the defendant as any in the record. The juror Iler, in his examination in chief by defendant's counsel, said that he did not know the plaintiff; had heard nothing about this case; had heard considerable talk about the wreck; read of it in the newspapers, and heard persons talk about it who claimed to have looked at and examined the wreck; from what he had heard the persons say who had examined the wreck, and what he saw in the newspapers, he had formed and expressed an opinion as to whether or not the railroad company was to blame for the wreck; he had that opinion then; did not know that it was a particularly fixed opinion; it is one that would require some evidence to remove. He could not say how many persons he had heard talk about the wreck, who had examined and looked at it, but supposed, perhaps, a half dozen; they said what they supposed caused the wreck; they were persons whom he had respect for. From what they said, and what he had read in the newspapers, he had formed an opinion as to the cause of the wreck; he had heard the various theories put forth through the newspapers, as to whether the wreck was caused by a defective structure, or by a rail being removed from the track by some evil-disposed person. At the conclusion of his examination by counsel, the juror, in response to questions by the court, said that what he had heard about the transaction was not from any of the witnesses in the case, but just from persons who had gone to view the wreck; that no opinion he had formed would influence his judgment in the trial of the case, but he should try the case impartially, according to the law and the evidence; that he could disregard what he had heard about the wreck, and

would be governed by the evidence altogether; would not regard what he had heard, as it was only hearsay; would pay no attention to what he had been told, but would simply be guided by the testimony given in court.  The challenge was thereupon overruled by the court, defendant excepting.

There is much conflict in the adjudged cases as to when an opinion touching the merits of the particular case will disqualify a person called as a juror.  The standard of Lord Mansfield, in *Mylock* v. *Saladine,* 1 W. Bl. 480, that " a juror should be as white as paper, and know neither plaintiff or defendant, but judge of the issue merely as an abstract proposition upon the evidence produced before him," has long since been discarded as impracticable.  The courts are agreed, that with the present popular intelligence and wide dissemination of current events, through the medium of the press, a juror's mind cannot reasonably be expected to be "as white as paper," and it is no longer regarded as an objection, *per se,* to a person called as a juror, that he has heard of the particular case, or even formed or expressed an opinion touching the merits thereof.

"Were it possible," said Mr. Chief Justice Marshall, "to obtain a jury without any prepossessions whatever, respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore not required.  The opinion which has been avowed by the court is, that light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him."   (Trial of Aaron Burr, Vol. 1, 416; 1 Thomps. Trials, § 79.)

The rule laid down by this distinguished jurist in a trial which at the time attracted universal attention, has

become substantially the settled law of this country, and it is now generally considered that if the juror's opinion will readily yield to the evidence presented in the case, he is not incompetent to sit upon the trial of the issue.

As to when the opinion is of such a character, that it will not readily yield to the evidence produced, the law in this country is in such a state of confusion, that no success can be hoped for in reconciling conflicting opinions, or arraying the decisions in logical order. Expressed in the varying terms of judicial utterances, the opinion or impression concerning the merits of the cause on trial, which disqualifies a person called as a juror, must be a "fixed," "absolute," "positive," "definite," "decided," "substantial," "deliberate," "unconditional" opinion. The rule is almost universally laid down by these words, or words of similar import. A "conditional," "hypothetical," "contingent," "indeterminate," "floating," "indefinite," "uncertain" opinion will not do. (*Schoeffler* v. *State*, 3 Wis. *823; *People* v. *Bodine*, 1 Denio, 281; *Staup* v. *Com.* 74 Penn. St. 458; *Willis* v. *State*, 12 Ga. 444; *Osiander* v. *Com.* 3 Leigh, 780; 24 Am. Dec. 693; *People* v. *Stout*, 4 Parker, Crim. Rep. 71; 1 Thomps. Trials, § 78.) These terms convey one and the same meaning, and, in substance, require that in order to disqualify a juror, his opinion touching the merits of the case on trial must be of a fixed and determinate character, deliberately formed and still entertained; one that in an undue measure shuts out a different belief. An opinion or impression formed from rumor, newspaper reports, or casual conversation with others, which the juror feels conscious he can dismiss, and so unsubstantial that contradiction from the same source would be as readily accepted as true, as the original statements upon which the impression or opinion was formed, constitute, ordinarily, no sufficient objection to him.

"The opinion or judgment," says Chief Justice SHAW, "must be something more than a vague impression, formed from casual conversation with others, or from reading imperfect, abbreviated newspaper reports. It must be such

an opinion, upon the merits of the question, as would be likely to bias or prevent a candid judgment upon a full hearing of the evidence.  If one had formed, what in some sense might be called an opinion, but which yet fell far short of exciting any bias or prejudice, he might conscientiously discharge his duty as a juror." (*Comw.* v. *Webster*, 5 Cush. 297; 52 Am. Dec. 711.)

While the rule is generally recognized, that the disqualifying opinion of a juror must be of a fixed and determined character, its application is frequently a matter of great nicety, and the courts have struggled, apparently in vain, to establish some judicial test by which the question can be determined.  In order to avoid the uncertainty in the decisions, as well as the supposed inflexible rules of law, by which the courts were driven, in many instances, to the illiterate and hopelessly ignorant portions of the community for jurors, the legislature of this, as well as many other states, has enacted a statute by which the competency of a person, called as a juror, shall be determined, on the trial of a challenge, for having an opinion touching the merits of the particular case.

By section 187, Hill's Code, it is provided, that on the trial of a challenge for actual bias, "although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied from all the circumstances that the juror cannot disregard such opinion, and try the issue impartially."  This statute is but a recognition of the fact that, at the present day, when newspapers, railroads, and telegraphs have made intercommunication easy, and when the important transactions of to-day in all their details are published to the world to-morrow, the advance of popular intelligence and wide dissemination of knowledge of current events, have under the former rules of law, rendered it impossible to secure a jury of intelligent men for the trial of causes which

have excited much public attention and have resulted in the necessity of trying such cases before juries composed of the illiterate and ignorant. Statutes of this character have been held not unconstitutional as invading the right of trial by jury. (*Stokes* v. *People*, 53 N. Y. 164; 13 Am. Rep. 492; *Jones* v. *People*, 2 Colo. 351; *Cooper* v. *State*, 16 Ohio St. 328.)

This statute does not deny the principle, which has its foundation in natural justice as well as law, that jurors should be impartial and free from any existing bias which may influence their judgment. But it assumes, and we think correctly, that a man may be a fair and impartial juror, although he have an opinion touching the merits of the cause on trial, and that he may, notwithstanding, be able to set aside and disregard such opinion and decide the case from the evidence independently thereof and uninfluenced thereby. We think human experience teaches that it may not unfrequently happen that persons who have formed an opinion touching the merits of a cause from reports verbal or written, may, as jurors, lay aside their prepossessions, and not only honestly and conscientiously endeavor, but in fact be able to hear and decide the case upon the evidence, uninfluenced by such prepossessions. Whether a person called as a juror can do so or not depends largely upon his general intelligence, manner, tone, appearance, personal peculiarities, and sources of the information from which his opinion is formed, its strength, the fact whether he exhibits any pride of opinion which may lead him to give too little or too much weight to the testimony for or against either party, and many other circumstances, difficult if not impossible to suggest. The determination of his competency, therefore, necessarily becomes primarily a question for the trial court, keeping ever in view, as it should, that the ultimate object to be attained is a trial before a fair and impartial jury. The question is wisely left largely to the sound discretion of that court, and its findings upon a challenge to a juror for actual bias, where there is any reasonable question as to his competency,

ought not to be reviewed by an appellate court unless it clearly appear that such discretion has been arbitrarily exercised. (*State* v. *Tom*, 8 Or. 177; *State* v. *Saunders*, 14 Or. 300.)

It is ordinarily more safe and just to the juror and the cause of truth, to trust to the impression made upon the trial court, which heard his testimony, and noticed his manner and appearance while under examination, subject to the scrutiny of counsel, than to any written or reported statement of his testimony. His tone, temperament and personal peculiarities, as exhibited on his examination, and which do not appear in the written report of his testimony, are important factors in determining his competency as a juror. If a person called as a juror on his examination, when challenged, discloses that he has a fixed and definite opinion in the case, on the merits, and nothing further is shown, the court ought, as a matter of law, to reject him as incompetent. Such a juror necessarily does not stand indifferent between the parties; and it matters little from what source he received the information upon which his opinion is based. If, however, he has no fixed belief or prejudice, and is able to say he can fairly try the case on the evidence, freed from the influence of such opinion or impression, his competency becomes a question for the trial court, in the exercise of a sound discretion, and its findings ought not to be set aside by an appellate court unless the error is manifest. "No less stringent rules," says Mr. Justice WAITE, "should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the conscience or discretion of the court." (*Reynolds* v. *U. S.* 98 U. S. 156.)

In the case before us, we think the challenges to the jurors were each properly overruled. Such opinions as they had were formed from newspaper reports and casual conversations with persons who had visited the wreck. They evidently had no prejudice against the defendant, and had taken no particular interest in the case. It is apparent that they had nothing but loose, floating, hesitating opinions; and as far as we can see, there was no such prejudgment of the case as would prevent them from sitting as fair and impartial jurors. The language of their examination is qualified and considerate, and is not that of positive men, hasty to judge and prompt to condemn, but rather that of honest, careful, conscientious men, fair, open, and candid, with an obvious purpose to conceal nothing and suppress nothing. They each was conscious that they could disregard all they had heard about the case, and try it on the evidence as produced, uninfluenced by any opinion or impression they then had. We cannot think this is such a manifestation of partiality or prejudice as left nothing to the conscience or discretion of the trial court.

2. Excessive damages: In *Nelson* v. *O. R. & N. Co.* 13 Or. 141, and *McQuaid* v. *P. & V. R. R. Co.* 19 Or. 535, it was held by this court that where the verdict of the jury is excessive, it is the duty of the trial court to set it aside; but its refusal to do so cannot be reviewed in this court. Until these cases are overruled they are the law of this state and control in the determination of the question sought to be raised in this case. Nothing in the record before us indicates that the damages assessed by the jury were so disproportionate to plaintiff's injury as to justify us in reëxamining the question at this time, even if we were otherwise disposed to do so.

The judgment is affirmed.