Decided 26 June, 1899.

## STATE *v.* MORSE.

[57 Pac. 631.]

1. CRIMINAL LAW—COMPETENCY OF JUROR.—Although a juror stated that he had talked with persons who seemed to have considerable knowledge concerning the case, and had an opinion as to the guilt or innocence of defendant which it would take evidence to remove, he is nevertheless competent, where it appeared from his examination as a whole that he could give the defendant a fair trial, and that his opinion would readily yield to the evidence, if unsupported thereby.

2. BIAS OF JUROR—TRIAL.—The ruling of the trial court on a challenge to a juror for bias will not be disturbed, unless the juror's disqualification is clearly shown as a matter of law: *State* v. *Olberman*, 33 Or. 556, followed.

3. STOCK BRAND AS EVIDENCE.—Evidence of the brand used by the prosecuting witness is competent on the trial of one charged with stealing his stock as a step in the identification of the missing animals.

4. IMPEACHING EVIDENCE.—Defendant's counsel asked the prosecuting witness if he did not make a certain statement at a specified time and place to certain named persons, and afterwards introduced witnesses to impeach defendant's negative answer. Thereafter the state called one of the persons named in the impeaching question, who testified that he was present at the time referred to, but did not hear the prosecuting witness make the statement testified to by the other witnesses. *Held*, that it was then proper to refuse to permit defendant to show that the statements took place after the witness called by the state, and whose name was mentioned in the impeaching question, had left the place. After defendant had fixed the time, place and persons present, he will not be permitted to change or vary them.

5. HEARSAY EVIDENCE.—Evidence that one of the defendants jointly indicted for stealing horses stated to a witness some time prior to the taking of the horses that he had authority from the prosecuting witness to gather up the horses· and dispose of them, is not admissible upon the separate trial of another defendant, since it is purely hearsay: *State* v. *Fletcher*, 24 Or. 295, applied.

6. ARGUMENT OF COUNSEL—READING PAPERS NOT IN EVIDENCE.—Defendant's

affidavit for a continuance, where not offered in evidence, cannot be read and commented on by the state's attorney in the argument to the jury: *State* v. *Baker*, 28 Or. 441, cited.

7. Harmless Error.—Error, in that the state's attorney read to the jury and commented on parts of defendant's affidavit for a continuance, which was not in evidence, was harmless where defendant testified in his own behalf to substantially the same facts as those set forth in the affidavit.

From Umatilla : Stephen A. Lowell, Judge.

Zibe Morse appeals from a conviction of larceny.

Affirmed.

For appellant there was a brief over the names of *Carter & Raley* and *Thomas Fitz Gerald*, with an oral argument by *Mr. J. H. Raley* and *Mr. Fitz Gerald*.

For the state there was a brief over the names of *D. R. N. Blackburn*, Attorney-General, *Henry J. Bean*, District Attorney, and *James A. Fee*, with an oral argument by *Mr. Bean* and *Mr. Fee*.

Mr. Justice Bean delivered the opinion.

The defendant was indicted jointly with Augustus Hill and Jack Ogg, for the crime of larceny in stealing fifty-two head of horses, the property of Peter Nelson. He was tried separately, and convicted, and from the judgment rendered thereon he appeals.

1. The first three assignments of error relate to the overruling of the defendant's challenge of the jurors Carney, Nelson, and Rose, for cause. The Carney case, being the strongest for the defendant, will be the only one considered. On his examination by the defendant's counsel, he stated that he was acquainted with the prosecuting witness and the defendant; that he had heard a good deal about the case, and had talked with persons who seemed to have considerable knowledge concerning it, but did not know whether they were witnesses or not; that from what he had heard and read he had formed an

opinion as to the guilt or innocence of the defendant, which he still retained, and which it would take evidence to remove; that he had no bias or prejudice which would prevent him from giving the defendant a fair and impartial trial, and, if selected as a juror, would certainly try to do so ; that he heard a little of the testimony on a former trial, and had heard a great deal on the outside, and, in answer to a leading question, said he thought the opinion he then entertained would hinder him from giving the defendant a fair and impartial trial. He was thereupon challenged for cause, and upon examination by the district attorney stated that, if accepted as a juror, he should certainly endeavor to try the case fairly and impartially, upon the testimony of the witnesses and the law as given by the court, although he felt that his previous opinion would make it more difficult for him to do so ; that, if he should hear persons whom he credited and believed contradict what he had already heard, without their being under oath, it would have a tendency to remove the opinion or impression that he then had, and would offset what he had already heard ; that, if accepted as a juror, he thought he could try the case fairly and impartially, totally disregarding anything he had heard concerning the guilt or innocence of the defendant ; that he could listen to the testimony of the witnesses and the instruction of the court, and render a verdict accordingly, disregarding all he had heard outside concerning the matter. The challenge was thereupon resisted by the counsel for the state, and, in answer to questions propounded by the court, the juror said he felt that he could disregard his previous opinions, and try the case entirely upon the evidence as given upon the stand and the law as given by the court, although he had heard a good deal about the case, and, of course, had some idea in regard to it.

The condition of the juror's mind, as thus disclosed by his examination, indicates that his opinion was not of a fixed and determined character, but was so unsubstantial that contradiction from any reliable source would be as readily accepted as true as the statements upon which such opinion was formed, and would remove any impression he then had. His examination by the court and counsel was exhaustive, and carefully conducted, and we do not think that it shows his opinion to be of such a character as to disqualify him as a matter of law. He evidently had no prejudice against the defendant, and, so far as we can see from his examination, there was no such prejudgment of the case as would prevent him from sitting as a fair and impartial juror. His answers to the questions propounded were not those of a positive man, hasty to judge and prompt to condemn, but rather of a careful, conscientious man with an obvious purpose to conceal nothing from his interrogators. It is true he had formed some opinion concerning the guilt or innocence of the defendant, but he seemed conscious of the fact that he could disregard all he had heard of the case, and try it on the evidence produced. We cannot think, under these circumstances, that his disqualification was so apparent as to render the overruling of the challenge reversible error.

2. We have repeatedly held, and it may now be regarded as the settled law of this state, that the qualification of a juror, when challenged for actual bias, is primarily a question for the trial court, and that its findings will not be disturbed on appeal unless the disqualification is clearly shown as a matter of law : *Kumli* v. *Southern Pac. Co.*, 21 Or. 505 (28 Pac. 637) ; *State* v. *Brown*, 28 Or. 147 (41 Pac. 1042) ; *State* v. *Kelly*, 28 Or. 225 (52 Am. St. Rep. 777, 42 Pac. 217) ; *State* v. *Olber-*

35JOR.—30.

*man*, 33 Or. 556 (55 Pac. 866). For, as said in *Kumli* v. *Southern Pac. Co.*, 21 Or. 505 (28 Pac. 637) : "It is ordinarily more safe and just to the juror, and the cause of truth, to trust to the impression made upon the trial court, which heard his testimony and noticed his manner and appearance while under examination, subject to the scrutiny of counsel, than to any written or reported statement of his testimony. His tone, temperament, and personal peculiarities, as exhibited on his examination, and which do not appear in the written report of his testimony, are important factors in determining his competency as a juror. If a person called as a juror, on his examination when challenged, discloses that he has a fixed and definite opinion in the case on the merits, and nothing further is shown, the court ought, as a matter of law, to reject him as incompetent. Such a juror necessarily does not stand indifferent between the parties, and it matters little from what source he received the information upon which his opinion is based. If, however, he has no fixed belief or prejudice, and is able to say he can fairly try the case on the evidence, freed from the influence of such opinion or impression, his competency becomes a question for the trial court, in the exercise of a sound discretion, and its findings ought not to be set aside by an appellate court unless the error is manifest. 'No less stringent rules,' says Mr. Justice Waite, 'should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the conscience or discretion of the court :' *Reynolds* v. *United States*, 98 U. S. 156."

3.  The fourth, fifth, sixth, and seventh assignments of error present practically but one question, viz., the competency of the evidence of the stock brand of the prosecuting witness, and the record thereof made after the crime is alleged to have been committed and a few days before the trial.  This is substantially the same question as just decided in the case of *State* v. *Hanna, ante* 195 (57 Pac. 629), who was indicted for and convicted of buying and receiving the property described in the indictment in this case, as having been stolen by the present defendant and his associates.  The testimony in relation to the ownership, description, and identification of the property was practically the same in the two cases, and what is said in the *Hanna Case* concerning the relevancy and competency of proof of Nelson's brand, and the purpose for which the evidence was offered and admitted, is applicable here.

It is argued, however, that in the case at hand there was no proof of ownership other than by means of the brand ; but we do not so read the record, and, besides, no such question was raised in the court below.  The sole question there made was as to the competency of the testimony identifying and describing Nelson's brand, and showing that the animals alleged to have been stolen were branded therewith, and not as to whether the state had given sufficient proof of ownership to carry the case to the jury.  It is, therefore, unnecessary for us to pass upon this phase of the case ; but, if the question was properly here, we should have no hesitancy in holding that there was ample evidence of ownership to support the verdict.  Nelson testified that he was the owner of seventy-five or one hundred head of horses, describing them in a general way, running on the Badger Spring Range, which were branded with his brand, and the state gave evidence to the effect that about that number of

horses, answering the description of Nelson's, and so branded, were driven from the range by the defendant and his associates, taken by them to Pendleton, and from there shipped to and received at the Linnton cannery, near Portland.

The next assignment of error relates to the admission of the testimony of the witness McCarty as to the ownership of the HC horses, found with those alleged to have been stolen by the defendant when the shipment reached the Linnton cannery in Portland. What is said in the case of *State* v. *Hanna* on this question is also applicable here.

4.   It is next claimed that the court erred in refusing to permit the witness Babb, called in rebuttal by the defendant, to testify as to the length of time a certain conversation between himself and the prosecuting witness continued. It appears that while the prosecuting witness was on the stand, he was asked, upon cross-examination by the defendant, for the purpose of impeachment, if he did not state to the witness Babb, in a certain saloon in Pendleton, on a certain date, in the presence of certain persons, naming them, that he had told Jack Ogg to gather up his scattering horses, ranging in towards Echo and north of Barnhardt's Station, and sell and dispose of them, but that he did not expect him to take the entire band. To this question the witness answered in the negative, and defendant thereupon called two or three persons named in the question, who testified that they were present at the time indicated and heard the prosecuting witness make the statement imputed to him. Thereafter the state called in rebuttal, among others, one of the persons named in the impeaching question, who testified that he was present at the time referred to, but did not hear the prosecuting witness make the statement testified to by the other witnesses. The defendant

thereupon recalled the witness Babb, and offered to show by him that the conversation to which he alluded took place after the witness called by the state, and whose name was mentioned in the impeaching question, had left the saloon ; but the court refused to permit the introduction of such testimony, and, we think, properly. The question asked the prosecuting witness was an impeaching question, in which the time, place, and persons who were alleged to have been present were specified ; and when the state thereafter undertook to show by some of such persons that no such conversation took place, the defendant could not shift his ground by saying that it did not take place at the time and in the presence of the persons named in the impeaching question, but at some other or different time, when at least some of the persons named were not present.

5.   The next assignment of error is based on the exclusion of the testimony of the witness Sitton, which it is claimed would, if given, have tended to show that some time prior to the taking of the horses described in the indictment, the defendant Ogg stated to the witness that he had authority from the prosecuting witness to gather up the horses, and sell and dispose of them ; but these declarations of Ogg were purely hearsay, and fall within the rule laid down in the case of *State* v. *Fletcher*, 24 Or. 295 (33 Pac. 575).

6.   The next and last assignment of error is based on the ruling of the court permitting counsel for the state, during his closing argument to the jury, to read a portion of an affidavit for a continuance previously made by the defendant, and to make certain comments thereon. In this affidavit the defendant swore that one David McCarty was a material witness in his behalf, and, if present, "would testify that he purchased of him [defendant] horses on or about the 1st of November, 1898,

which were delivered on or about the 11th day of November, and which were contained in the cars of horses alleged to have been stolen from Peter Nelson, and that none of the horses purchased by him from me were branded with the brand of Peter Nelson.'' Counsel, commenting upon this affidavit, called the jury's attention to the fact that, although McCarty was a witness on behalf of the defendant, he had not testified to the facts set forth in the affidavit; but had contradicted them. This affidavit was never offered or admitted in evidence, and should not have been referred to or used by counsel : *State* v. *Baker*, 23 Or. 441 (32 Pac. 161).

7.   But the record discloses that the error, if any, was harmless, and could not have prejudiced the defendant in any way. The defendant testified in his own behalf to substantially the same facts as stated in the affidavit, —that on the first of November, 1898, he met the witness McCarty at the depot in Pendleton, and sold him a car load of horses, which he was to deliver about the tenth or eleventh of the month to Hanna; that Ogg sold two car loads, to be delivered at the same time ; that he (defendant) delivered the horses to Hanna on the eleventh, and got a part of them from the Badger Spring Range ; that none of the horses so delivered had the quarter circle branded upon them, but were HG, HK, and 7HK horses, although the evidence conclusively shows that no horses so branded were in the shipment. The witness McCarty testified that he never saw any of the horses until they were on the road between Portland and the Linnton cannery, and did not know how they were branded or marked, because he ''never made it a point to examine brands,'' and therefore did not know whether there were any quarter circle N horses in the shipment received from Hanna or not. In view of this testimony, the reading of the affidavit and the comments

thereon by the state's attorney could not, in our opinion, have prejudiced the defendant. The affidavit was not permitted to go to the jury as evidence in the case, and its use by counsel amounted, in effect, to nothing more than a memorandum of the defendant's testimony as given on the trial, used for the purpose of pointing out the conflict between it and that of the witness McCarty. We are of the opinion, therefore, that the record presents no substantial error, and the judgment must be affirmed.

AFFIRMED.

Decided 6 November, 1899.