Argued March 24, affirmed May 24, rehearing denied July 6, 1927.

# STATE *v.* SAM STIGERS.

(256 Pac. 649.)

**Intoxicating Liquors—Act Prohibiting Possession of Unregistered Still Applies to All Stills Without Regard to Their Use (Laws 1923, p. 47, § 6).**

  1. Laws of 1923, page 47, Section 6, providing that no one shall possess any still worm or still without first registering it, is general and applies to all stills without regard to use intended.

**Jury—Whether Juror in Criminal Case is Actually Biased is for Trial Judge (Or. L., §§ 121–123, 1520, 1521).**

  2. In view of Sections 121–123, 1520, 1521, Or. L., whether a juror in a criminal case is actually biased is a question of fact to be determined by the trial judge.

---

  2.  See 16 R. C. L. 282.
     122 Or.—8

Criminal Law—Supreme Court cannot Review Decision of Trial
     Judge on Question of Juror's Actual Bias Unless All Testimony
     is Brought Up.

3.  Since question whether a juror is actually biased is one of
fact for trial judge, the Supreme Court cannot review his decision
unless all testimony adduced before him is brought up.

Jury—Fact of Juror's Previous Service in Prosecution of Offense
     Growing Out of Same Transaction Held not Evidence Per Se of
     Disqualification.

4.  Fact that juror previously served in prosecution of another
person for offense growing out of the same transaction *held* not con-
clusive evidence *per se* of juror's disqualification.

Criminal Law—Jury—Trier of Challenge of Juror for Actual Bias is
     Judge of Evidence, and His Decision will not be Disturbed Save
     for Abuse.

5.  The trier of the challenge of a juror for actual bias is the ex-
clusive judge of weight of evidence, and his decision will not be
disturbed in the absence of plain abuse of discretion.

Intoxicating Liquors—Instruction, if Defendant Delivered Still to
     Third Person With Knowledge of Intended Use, Such Act was
   .  Unlawful, Held Authorized by Evidence.

6.  In prosecution for unlawfully possessing a still, instruction
that, if defendant and another under agreement procured a still
and delivered it to a third person, with knowledge of its intended
use for manufacturing intoxicating liquor, such an act would be
a keeping and unlawful *held* authorized by evidence.

Intoxicating Liquors—Requested Instruction That Helping to Convey
     a Still was not Unlawful Held Misleading as Omitting Defend-
     ant's Aiding Another in Keeping It.

7.  In prosecution for unlawfully possessing a still, defendant's
requested instruction to acquit, if jury found defendant found a
still in the woods and brought it to the automobile, where he and
the driver conveyed it to the driver's house, and had nothing further
to do with it, *held* properly refused, it being misleading in leaving
out effect of defendant's aiding the driver in securing and keeping
the still.

Intoxicating Liquors—Instruction That Both Defendant and An-
     other Would be Equally Responsible if They Acted Together in
     Keeping the Still Held Proper (Laws 1923, p. 47, § 8).

8.  In prosecution, under Laws of 1923, page 47, Section 8, for
possessing a still without first registering it, evidence that defendant
and another procured the still, which was delivered to a third
person by defendant's associate, authorized instruction that both
the associate and defendant would be equally responsible if they
acted together in keeping the still.

---

5.  See 16 R. C. L. 289.

Criminal Law—Assignments not Discussed in Brief are Waived.

9.   Assignments of error not discussed in the brief are deemed waived.

Intoxicating Liquors, 33 C. J., p. 580, n. 14, 20 New, p. 790, n. 35, p. 791, n. 47, 48, 50.
  Juries, 35 C. J., p. 325, n. 17, 18, p. 328, n. 45, 46.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Albert Abraham.*

For respondent there was a brief and oral argument by *Mr. Guy C. Cordon,* District Attorney.

BURNETT, C. J.—1. By an indictment returned by the grand jury of Douglas County February 15, 1926, it is charged that the defendant, on January 28th of that year,

"did then and there wrongfully and unlawfully have and keep in his possession a still and still worm without then and there having first registered the same together with a description of the particular premises where the same was then and there kept, with the county clerk of Douglas County, Oregon."

The statute under which the indictment was drawn is Section 6 of the Act of February 8, 1923, being Chapter 30, Laws of Oregon of that year, reading in part as follows:

"No person shall keep in his possession any still worm or still in any county in this state without having first registered the same, together with a descrip-

9.   See 2 R. C. L. 178.

tion of the particular premises where it is kept, with the county clerk of said county.''

The section is part of an act prohibiting the making or possession of any mash, wort or wash fit for distillation or for the manufacture of intoxicating liquors except by persons licensed under the federal laws and prohibiting the possession or setting up of still worms or stills without having first registered the same both under the federal law and regulations and with the county clerk of the county where kept. We note that the act is general in its terms and applies to all stills without regard to what the same are to be used for.

The defendant, after being arrested on a magistrate's warrant, made and signed the following confession:

"Roseburg, Oregon, Feby. 7, 1926.

"My name is Sam Steiger. I am 21 years old. A man, Gordon by name, came in the service station I think on January 24, 1926, about noon. Happy Stowie has charge of the service station. Gordon said, 'If you and Stowie can get me a still, I will make some booze.' I told Gordon that I thought I could get a still. He, Gordon, said, 'If you can get me the still, I will give you a bottle now and then, or all you want to drink.' Gordon also promised Stowie that he would furnish him with all the booze he wanted to drink, in case he helped to get him a still. After Gordon had left, I talked it over with Stowie, and told him that I thought I could find a still. Two or three days after we were talking to Gordon, I went out to see if I could locate the still; about one year ago I met Tom Foley in Cottage Grove. He says to me, 'Who does that still belong to on Buck Creek?' I says, 'I don't know.' It was in the morning that I went out to see if I could find the still, Stowie come out in his car in the afternoon to bring the still in, but I hadn't found it. We both went home. The

next day I went back and about 3 o'clock I found the still. I brought it down near the road. Stowie came up in his car this same day and we put the still in his car and brought it down to camp ground of Stowie and put it in his house. I have never operated a still in my life, never was interested in a still. I have made the above statement freely and voluntarily, and was fully informed that any statement that I might make would be used against me should this case come on for trial. And I say further that I have told the truth.

"(Signed)   SAM STIGER.

"Witnesses:
        "S. W. STARNER.
        "D. R. SHAMBROOK."

The voluntariness of the confession was not questioned at the trial, was amply supported by the testimony of the witnesses and its introduction in evidence was not challenged. Stowie and the present defendant were indicted separately and tried separately. Stowie testified at this trial substantially corroborating the confession. The still was found in Stowie's residence by officers armed with a search-warrant. From a judgment on conviction in the Circuit Court, the defendant has appealed.

It appears that Stowie had been tried by the jury in attendance at that term of the Circuit Court and was convicted for keeping in possession this same still mentioned in the present indictment. At the trial of the defendant Stigers, after he had exhausted all his peremptory challenges, a juror Howard was drawn. Previously, during the impaneling of the jury, the defendant, by his attorney, had challenged five jurors "for the reason that they and each of them had served as jurors in the case of the *State of Oregon* v. *Henry Stowie;* that said challenges and

each of them were overruled and that the defendant duly excepted to each of said rulings and exceptions were duly allowed by the court." The bill of exceptions goes on to state as follows:

"And it is further certified that after the defendant had exhausted all of his peremptory challenges, Lulu A. Howard was drawn as a juror; that said Lulu A. Howard was challenged by the defendant for the reason that she had served as a juror in the said case of *State of Oregon* v. *Henry Stowie;* that the court overruled said challenge, and the defendant, by his attorney, duly excepted to said ruling and said exception was duly allowed by the court; that said Lulu A. Howard served as a juror in this case.

"And it is certified in connection with the said exceptions to the rulings of the court on said challenges to said jurors, that said Henry Stowie is the same person mentioned in the court's instructions in this case; that said Stowie was tried and convicted in the above entitled court at this same term of court; that said above-named jurors so challenged were jurors in said case of *State* v. *Stowie;* that the indictment of said Stowie and his trial thereon was for the possession of the same still for which this defendant was indicted and tried; that the evidence in the Stowie case tended to involve this defendant in the same transaction and crime for which said Stowie was tried; that said jurors and each of them so challenged stated that they had no opinion as to the guilt or innocence of the defendant, and could disregard anything they had heard in the Stowie case, and would give the defendant a fair and impartial trial."

No evidence given on the *voir dire* of any of the jurors is quoted in the bill of exceptions or otherwise alluded to and, as stated in the excerpt just quoted, the service of the juror Howard on the jury in this case is one of the grounds urged for reversal of the case.

"In criminal actions, the trial jury is formed in the manner prescribed in chapter II of title II of the Code of Civil Procedure, except as otherwise expressly provided in this chapter." Section 1520, Or. L.

Referring to the Civil Code, as indicated, after the division of challenges into peremptory and for cause, they are further classified as general, that the juror is disqualified from serving in any action; or, particularly, that he is disqualified from serving in the action on trial. General causes of challenges are not here involved. Particular causes are also classified into two kinds:

" * * 1. For such a bias as, when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this Code as implied bias;

"2. For the existence of a state of mind on the part of the juror, in reference to the action, or to either party, which satisfies the trier, in the exercise of a sound discretion, that he cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this Code as actual bias." Or. L., § 121.

Turning now to the Criminal Code, we find Section 1521, reading thus:

"A challenge for implied bias may be taken for any of the following causes, and for no other:—

"1. Consanguinity or affinity, within the fourth degree, to the person alleged to be injured by the crime charged in the indictment, or to the person indorsed thereon as the prosecutor, or to the defendant;

"2. Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, with the defendant, or the person alleged to be injured by the crime charged in the indictment,

or indorsed thereon as prosecutor, or being a member
of the family, a partner in business with, or in the
employment on wages for either of such persons, or
being surety or bail in the action or otherwise for the
defendant;

"3. Having served on the grand jury which found
the indictment, or on a coroner's jury which inquired
into the death of a person whose death is the sub-
ject of the indictment;

"4. Having been one of- a jury formerly sworn in
the same action, and whose verdict was set aside, or
which was discharged without a verdict, after the
cause was submitted to it;

"5. Having served as a juror in a civil action, suit,
or proceeding brought against the defendant for sub-
stantially the same act charged as a crime;

"6. If the offense be punishable with death, the en-
tertaining of such conscientious opinions as would
preclude a person from finding the defendant guilty;
in which case he shall neither be permitted nor com-
pelled to serve as a juror."

2. It differs materially from Section 122, Or. L.,
relating to challenge for implied bias in civil actions.
In this category of challenges for implied bias em-
bodied in Section 1521, there is no subdivision that
applies to a juror who has served on the trial of one
indicted separately for an offense growing out of the
same transaction. The matter must then be treated
as a question of actual bias. The juror was not chal-
lenged for actual bias. The defendant, so to speak,
did not plead actual bias but only a circumstance, the
previous service of the juror, which could be used in
evidence on the trial of the issue joined on such a
challenge. Whether a juror is actually biased or not
is a question of fact to be determined by the trial
judge. The testimony is addressed to him. Of
course, the fact that the juror has served on a jury

involving the same transaction may be taken into consideration as evidence by the one who tries the challenge. All the cases cited in argument treat the matter as a question of fact.

3. Under these circumstances, we cannot review the decision of the trial judge unless we have before us the testimony that was adduced before him and all of it, except, as in the case of *State* v. *Miller,* 46 Or. 485 (81 Pac. 363), there is enough testimony quoted which clearly satisfies the reviewing court that the juror was in fact actually biased. No case that has been called to our attention has held that as a matter of law previous service on such a jury is *per se* a disqualification of a juror. All have treated it as a matter of fact.

In *State* v. *Steeves,* 29 Or. 85 (43 Pac. 947), the defendant had been indicted jointly with another for murder. His codefendant, Kelly, had been tried and convicted. At the trial of Steeves he was denied the right to ask the jurors on *voir dire* if they had an opinion about the guilt of Kelly. This was held to be error but in commenting about the formation of a jury and the qualifications of a juror, Mr. Justice MOORE, delivering judgment, wrote:

"The court must be satisfied that he can disregard any casual opinion he may have formed, and fairly and impartially try the issues in controversy. When the qualifications of a juror have thus been tried, no bill of exceptions can portray the manner, tone, and bearing of the juror as he appeared and acted before the trial court during the examination; and for this reason, when the juror has said he can lay aside his previously formed opinion, and the court believes he can do so, its discretion, when exercised, will not be reviewed upon appeal except for a manifest abuse thereof."

See, also, *State* v. *Savage,* 36 Or. 191, 203 (60 Pac. 610, 61 Pac. 1128).

Section 123, Or. L., reads thus:

"A challenge for actual bias may be taken for the cause mentioned in the second subdivision of section 121; but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

4, 5. Of course, the Juror Howard naturally obtained some impressions about the merits of the case against Stowie and acted accordingly in that case. It is not impossible, however, as a matter of law or even of fact that she could not disregard that opinion and try the case for or against Stigers according to the law and evidence as presented to her at his trial. From all the evidence before it on the trial of the challenge, the court may have been satisfied that she would act with the same degree of fidelity to the law and the evidence as a fair-minded surveyor would exercise when called upon to measure a tract of land the second time. In other words, the fact of the previous service is not conclusive evidence *per se* of the disqualification of the juror. The trier of the challenge is the exclusive judge of its weight and his decision will not be disturbed in the absence of a plain abuse of discretion. In brief, the case is here on appeal on that point with only a part of the showing made and we cannot review that decision of the Circuit Court where the evidence offered is not thus conclusive.

6. The testimony discloses that, in pursuance of the arrangement with the man Gordon, the defendant, on two different days, hunted for the still which seemed to have been hidden in the woods; that he was successful in finding it on the second day, when he moved it to a point near the road and again concealed it. When Stowie arrived with his car, and while he was turning it around, the defendant brought the still from the place where he had last deposited it and put it into the car. Together they took it to Stowie's residence, where the defendant took it out of the automobile and carried it into Stowie's house and set it in the bathroom. There it remained until discovered by the officers with the search-warrant.

The statute makes no reference to the length of time the still shall be kept and hence there was evidence justifying the court in giving the following instruction, which the defendant assigned as error:

"If it shall appear from the evidence beyond a reasonable doubt that this defendant and the man named Stowie, acting with him, under an agreement with a third party, went to the place where the still and still worm was found, and delivered it to another party, with the knowledge and purpose of being used for the manufacture of intoxicating liquor, that such keeping or such act would be a keeping and unlawful. The time of the keeping would not be material in this case."

7. The defendant assigned as error the refusal of the court to give the following instruction requested by him:

"I instruct you that the mere giving or furnishing to another of a still is no crime. If, therefore, you merely find that the defendant found a still in the

woods and brought it to Stowie and helped him convey it to Stowie's house, and had nothing further to do with it, then your verdict should be in favor of the defendant, and you should acquit him."

This instruction was properly refused because it leaves out of view the effect of the defendant aiding and abetting Stowie in securing and keeping the still, and would have been misleading to the jury.

8. The court, in substance, instructed the jury that both Stowie and the defendant would be equally responsible if they were acting together in keeping the still. No error can be assigned on the giving of such an instruction.

9. The other assignments are not discussed in the brief and are, therefore, deemed waived. Examination also discloses that they are without legal merit.

The judgment is affirmed.

AFFIRMED.    REHEARING DENIED.

McBRIDE and COSHOW, JJ., concur.

RAND, J., dissents.