Argued July 25, reversed and remanded August 22, reconsideration denied
September 27, petition for review denied December 28, 1977

LANE COUNTY, *Appellant,*

*v.*

WALKER et ux, *Respondents.*

(No. 75 0896, CA 7068)

568 P2d 676

E. Jay Perry, Acting County Counsel, Eugene, argued the cause and filed the briefs for appellant.

William G. Wheatley, Eugene, argued the cause for respondents. With him on the brief was Jaqua & Wheatley, P.C., Eugene.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

## TANZER, J.

The plaintiff county appeals from a judgment in a condemnation case. There was much ado from the outset of trial regarding the proposition that the owner of condemned land is not entitled to compensation in addition to fair market value on the ground that it is an involuntary sale. All assignments of error revolve around this point.

The plaintiff first assigns as error the denial of its challenge of a juror for actual bias. Its peremptory challenges had been exhausted. After a few preliminary questions and answers, the following voir dire examination occurred:

"Q. [by Mr. Perry—plaintiff's counsel] Do you have any basic disagreement with either the constitutional principle of just compensation for public taking?

"A. Well, yes, I do. I do, as a matter of fact. That in particular, the point that was mentioned earlier that not a nickel should be added despite the fact that Mr. Walker did not want to sell his property. I disagree with that.

"Q. And if the Court directed you to make that assumption, and base your finding upon that direction, pursuant to law, you don't feel you'd be able to do that?

"A. Well, I would certainly try.

"Q. Okay. Do you think that basic disagreement with principle, I guess, is going to make you uncomfortable in being one of the jurors that determines the outcome of this case?

"A. No, I don't think it would make me feel uncomfortable.

"Q. Would you rather not be here as a juror?

"A. No, I would rather not [be] in this. Because— because of my basic disagreement with that particular point.

"Q. Okay. Have you ever been involved in condemnation proceedings before?

"A. No, I haven't.

"MR. PERRY: Well, I have no further questions. But would ask that based upon the stated expression of disagreement with principle and—

"* * * * *

"THE COURT: I would like to ask a question, though, before the Court and counsel have a colloquy. Will you find it difficult to follow the Court's instruction's, even though those instructions as to the law may be contrary and different than you think they ought to be?

"MR. HOEKSTRA [the juror]: I generally find that difficult. I'm sorry, but that's—. Especially also when it is a question between—between an agency and a person. I mean, because the agency is part of the law-making structure.

"THE COURT: So the feeling that you have that you've expressed, I take it is a very strong feeling?

"MR. HOEKSTRA: Right."

There followed an extensive attempt by defense counsel at rehabilitation of the juror:

"Q. Okay. Well, in a case of this nature, at the conclusion the Judge would tell the members of the jury in effect this, that when the witnesses get on the stand and tell you what they think is right and wrong, that you and you alone are the—are the one who decides what weight to be given in the testimony. You might think this witness is crazy. And—and maybe everybody else disagrees with you, you know. But you are the ones that weigh that. Then the Judge would say, but when it comes to the law I can't have 12 jurors just figuring out what they think the law should be. So he will tell you the law, the Judge would, and then the jury is to apply that law to these facts. Now, probably in—now, to begin with, you don't really know yet what the law would be, because what Mr. Perry tells you or what I tell you isn't necessarily the law. It's—it can only come from the Court. So presumably, you don't yet know what all the issues of law would be. But it is not uncommon in any case, whether it's a criminal case, or a civil case, or this type of case, maybe an automobile case where the jury is listening to the Judge, and then they think, well, now, there's a crazy point of law. You know, what screwball ever came up with that. And you might think that's ridiculous. But then you have to go and ask yourself the further question, well, are you still willing to go ahead and take that concept of law and apply it to this set of facts. Now, if you're able to do that, then that is the type of juror that we would want. But if a person says, oh, my

[ 718 ]

feelings are so strong on this I don't care what that Judge tells me, I'm going to do just the opposite, close my mind to it, and wouldn't—wouldn't follow it. Now, do you feel in this case that your personal beliefs or convictions, whatever they are, are so strong in this area of condemnation that—that no matter what the Court told you on some areas of law that you would disregard that and apply some other principle?

"A. No, I don't feel. That's certainly not what I meant.

"Q. Okay. Now, the reason this is important is there are some cases where a person does feel that strongly. And a few years back when the death penalty, for instance, was applicable, a juror, you know, could really be searching their soul as to whether or not they could do what the Judge would want, knowing the consequences. And it would not be uncommon for a juror to say, well, that's just really too heavy for me. And I just can't do it; I won't do it. And there's nothing wrong with that. But on the other hand, it's not uncommon for us all to have feelings; well, that's—I don't know if I agree with that. But if that's the law, I'm going to do my job. Do you feel in this case that you would be able to follow the Court's instructions then on the law and apply the law as the Court gives it to you?

"A. I would be able to follow the instructions.

"Q. And as far as weighing the evidence, you would be willing to listen to the witnesses and give their testimony whatever weight would seem appropriate, and make your determination then based upon your evaluation of the evidence and the facts, and the Court's instructions on the law, is that correct?

"A. I would certainly try.

"MR. WHEATLEY [defense counsel]: I think the juror would be accepted."

As soon as the court began its own inquiry, however, the juror indicated that the attempted rehabilitation was not entirely successful:

"THE COURT: I'll ask one further question. As far as you're concerned, are you impartial on the beginning of this case, and can treat each of the parties fairly with the scales of justice evenly balanced? Or are you tilted one way or the other for one of the parties?

[ 719 ]

"MR. HOEKSTRA: I'm not impartial. I am tilted. But I would certainly try not to.

"THE COURT: You know your state of mind. And that's what, in effect, the lawyers are attempting, is as officers of the court and as advocates for their clients, to read your state of mind. And none of us can do that as accurately as you can. And so the answers to these questions are vitally important to these parties. You've indicated that you're tilted one way or the other. But would you, and you do not have to agree with me, I have to ask this question either in a negative or a positive sense, so don't read an answer into the way the question is framed, but would you base your decision in this case purely upon the evidence that you see and hear, and follow the Court's instructions? If your answer is no, you will be excused for cause. If your answer is yes, you may remain, perhaps, as a juror in this case. What is your answer?

"MR. HOEKSTRA: I would say yes.

"THE COURT: The motion for dismissal for cause is denied."

A challenge of a juror for cause is governed by ORS 17.135(2) and 17.145. The former statute provides the following definition:

"Actual bias * * * is the existence of a state of mind on the part of the juror, in reference to the action, or to either party, which satisfies the court, in the exercise of a sound discretion, that he can not try the issue impartially and without prejudice to the substantial rights of the party challenging."

ORS 17.145 provides that it is not the opinion itself which disqualifies a juror, but the likelihood that a juror cannot disregard the opinion. It provides:

"A challenge for actual bias may be taken for the cause mentioned in subsection (2) of ORS 17.135; but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror

[ 720 ]

cannot disregard such opinion and try the issue impartially."

The statute is a legislative recognition that people of affairs acquire knowledge and opinions but that they are also able to act responsibly as jurors and decide facts based solely upon the evidence. A less flexible rule would tend to eliminate sophisticated jurors. *State v. Armstrong,* 43 Or 207, 214-15, 73 P 1022 (1903).

■ While it is often said that the determination of the existence of actual bias is one of fact for the discretion of the trial judge, *see,* e.g., *State v. Dixon,* 5 Or App 113, 124, 481 P2d 629, *rev den* (1971), *cert den* 404 US 1204 (1972), the exercise of discretion must be according to legal principles. The statute speaks in the negative, purportedly requiring acceptance of the juror unless the court is satisfied that the juror "cannot" be impartial. A literal application of the statute would reject a juror who was certainly partial but allow a juror who was only probably impartial. The statute is not so absolute—rather the test is one of probabilities. As the Supreme Court said in *Mount v. Welsh et al.,* 118 Or 568, 578, 247 P 815 (1926):

> "Again: The test of a juror's disqualification is the probability of interest, prejudice or bias, as determined by the court's application of his judicial knowledge to the facts of the particular case * * *."

The probability which will require excuse of a juror for actual bias is that his knowledge or attitude will affect the process by which he finds the facts. As the Supreme Court said in *State v. Humphrey,* 63 Or 540, 548, 128 P 824 (1912):

> "* * * It is only when it is such a fixed attitude of mind that it would control his actions in some appreciable degree when he assumes the new relation of a trier of the fact involved in litigation that such a mental state will disqualify him. * * *"

■■ In this case, the answers of the juror indicate a strongly held opinion on a matter of principle which was adverse to the interest of the plaintiff. It is true that further questioning may qualify jurors who

express less strongly held views but who are nevertheless able to set them aside. *See,* e.g., *Highway Commission v. Hewitt et al,* 229 Or 582, 368 P2d 346 (1962). This juror, however, maintained his "tilt" through an extensive attempted rehabilitation The purpose of rehabilitative questioning is investigation, not persuasion. It is to determine whether the juror is able and likely to set aside his views, not to persuade him to do so or to elicit pro forma answers to leading questions. Here, the high probability that the deliberations of this juror would be affected by his strongly held opinion is evident. We therefore hold that it was an abuse of discretion to have denied the challenge for actual bias.

The other assignments of error deal with matters which are not likely to arise in the event of retrial.

Reversed and remanded.

**THORNTON, J.,** dissenting.

I would follow the admonition of *Kumli v. Southern Pacific Co.,* 21 Or 505, 28 P 637 (1892), and numerous subsequent cases, that the decision as to whether a juror can subordinate his personal views and follow the court's instructions is

"* * * wisely left largely to the sound discretion of that court, and its findings upon a challenge to a juror for actual bias, where there is any reasonable question as to his competency, ought not be reviewed by an appellate court unless it clearly appear that such discretion has been arbitrarily exercised." 21 Or at 510-11.

*Accord: State v. Dixon,* 5 Or App 113, 481 P2d 629, Sup Ct *review denied* (1971), *cert denied* 404 US 1024 (1972).

In my view the trial court did not abuse its discretion when it overruled plaintiff's challenge to the particular juror for cause.