Decided 3 July, 1905.

**STATE v. MILLER.**

81 Pac. 363.

APPEAL—BILL OF EXCEPTIONS.

1. A decision that a juror challenged for actual bias is competent may be reviewed on appeal, even though all the evidence as to his competency is not incorporated in the bill of exceptions, if the bill contains sufficient testimony to show that the juror was disqualified: *State* v. *Tom,* 8 Or. 177, distinguished.

JURORS—ACTUAL BIAS.

2. In a prosecution for murder, a juror who testifies that he was present in court at a former trial, heard part of the testimony, and talked with some of the witnesses, and formed a fixed and positive opinion, which it would require a good deal of evidence to remove, as well as a juror who served at the former trial and witnesses who had testified therein, and who had talked with jurors who served at the former trial and witnesses who had testified therein, and who states that he has formed an opinion which it would require strong testimony to overthrow, is incompetent for actual bias, under B. & C. Comp. §§ 121, 123, defining actual bias, and providing that an opinion shall not of itself be sufficient to sustain a challenge, but that the court must be satisfied from all the circumstances that the juror cannot disregard the evidence and try the issue impartially: *State* v. *Brown,* 28 Or. 147; *State* v. *Morse,* 35 Or. 462, and *State* v. *Armstrong,* 43 Or. 207, distinguished.

From Harney: MORTON D. CLIFFORD, Judge.

George S. Miller appealed from a conviction of murder in the second degree.                                    REVERSED.

For appellant there was a brief over the name of *Weatherford & Wyatt,* with an oral argument by *Mr. James K. Weatherford.*

For the State there was a brief over the names of *Andrew Murray Crawford,* Attorney General, *J. W. McCulloch,* District Attorney, and *Lionel Richard Webster,* with an oral argument by *Mr. Crawford* and *Mr. Webster.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The defendant, George S. Miller, was jointly indicted with James Colwell and Bert Baily for the murder of Joseph Warren Curtis, and, having been separately tried, he was convicted of murder in the second degree, and appeals from the judgment which followed, assigning as error, inter alia, the action of the court in denying challenges for actual bias interposed to certain persons called as jurors. It is maintained by counsel for the State, however, that the bill of exceptions does not show that all the testimony given by such persons as to their qualifications is included in the transcript, and hence the question sought to be

reviewed is not brought up for consideration. In *State* v. *Tom,* 8 Or. 177, it was held that, where the decision on the trial of a challenge of a juror for actual bias is assigned as error, this court will not revise the determination unless it appears from the transcript that all the evidence adduced at such trial is incorporated in the bill of exceptions. An examination of that case will show that one George Klum was called as a juror, and, having been challenged for actual bias, testified on his voir dire as therein set out. We have inspected the transcript in that case on file in this court, which, in addition to the testimony quoted in the opinion, is as follows:

"That said juror was submitted to the court, and the court announced that he was satisfied from all the circumstances of the case that the juror could disregard any opinion he had, and refused to sustain the defendant's challenge, but ruled that said George Klum was a competent juror to sit in said cause; to which ruling of the court the defendant by his counsel then and there excepted."

The answers of the juror as quoted in that case and the action of the court in determining his qualification, as herein specified, constitute the entire bill of exceptions relating to his examination. It is not to be supposed that the court, without further examination, arbitrarily decided that Klum was a qualified juror after he had testified "that he had a fixed opinion as to the guilt or innocence of defendant; that it would take evidence to remove such opinion; that it was founded upon what he had read in the newspapers touching the accusation, and upon statements made to him by persons who professed to detail the facts": *State* v. *Tom,* 8 Or. 177. The juror in that case was undoubtedly examined further concerning his qualifications, and from the testimony given the court must have determined that he could disregard the opinion he had formed, and impartially try the issue involved. As the bill of exceptions in that case did not purport to contain any of the evidence tending to show that the opinion which the juror had formed could be ignored, and as the testimony given by him did not necessarily show that he was disqualified, no other conclusion could have been reached than that announced.

The trial of a challenge for actual bias is not like the consideration of a motion for a judgment of nonsuit, which requires that the case should not be taken from the jury if there is any evidence, inference or presumption reasonably tending to support the plaintiff's theory of the case as disclosed by his pleadings. The granting or denying of such a judgment will not be reviewed unless the bill of exceptions conclusively shows that it contains all the testimony introduced at the trial prior to the interposition of the motion. This is so because the right to such a judgment does not depend upon the preponderance of the evidence, but upon the absence of any testimony necessary to support a material issue. A challenge for actual bias involves a question of fact relating to the qualification of the person called as a juror, and the issue raised is to be determined from the preponderance of the testimony tending to prove either the impartiality or the prejudice of such person. When it satisfactorily appears from the examination of a person called as a juror that he possesses such a state of mind that he cannot try the issues impartially, the introduction of any further testimony would be superfluous. So, too, when a bill of exceptions contains sufficient testimony, taken at the examination of a juror challenged for actual bias, conclusively to show that he is disqualified, any evidence in excess thereof must necessarily be useless.

The statement of this principle is not intended to contravene the legislative declaration that in the trial of a challenge for actual bias, although it should appear that the juror objected to had formed or expressed an opinion upon the merits of the case from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied from all the circumstances that the juror cannot disregard such opinion, and try the issue impartially: B. & C. Comp, § 123. Nor must the statute adverted to receive such a liberal construction as to nullify the fundamental law of this State, which, so far as involved herein, is as follows: "In all criminal prosecutions the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed": Const. Or. Art. I, § 11. Considering the qualifications of the persons challenged for

actual bias, the question to be determined is whether or not the testimony given by them shows that they were such jurors as are guaranteed to an accused in a criminal action. Actual bias, as defined by our statute, is the existence of a state of mind on the part of the juror in reference to the action or to either party which satisfies the trier, in the exercise of a sound discretion, that he cannot try the issue impartially and without prejudice to the substantial rights of the party challenging: B. & C. Comp. § 121. In prescribing the mode of determining the continuance of such a predisposition that disqualifies a person from acting as a juror it is further enacted that on the trial of an objection for actual bias, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the case from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied from all the circumstances that the juror cannot disregard such opinion and try the issue impartially: B. & C. Comp. § 123.

2. The dissemination of general information as a means of conducing to human enjoyment may well characterize the present as the newspaper age. A general demand for knowledge of current events gives rise to the publication of news. This necessitates the employment of alert correspondents in every section of the country, who industriously seek for interesting facts, put them into readable shape, and transmit them to the newspapers by which they are engaged. The perusal of these facts by thinking persons necessarily induces opinions, based on the assumption of the truth of the narration. The pioneers of this State were not able to secure many newspapers, and the few they had were read, not for pastime, but for information, and, being thinking men, their representatives in the legislative assembly, understanding the existing conditions, enacted the statute which provides that a preconceived opinion upon the merits of a cause, formed from what may have been heard or read, does not of itself necessarily render a person called as a juror partial. Upon a moment's reflection, the wisdom of this law is realized, for, if the existence of an opinion as to the merits of a cause based on what one called to try an issue may casually have heard or read

disqualified him as a juror, the trial of actions by juries would be monopolized by the ignorant, who are not interested in the world's progress, by those who would be willing to commit perjury to secure positions as jurors, and by those so weak mentally as to be unable to form conclusions from hearing or reading a statement of elementary facts.

The man who has read with care an ordinary newspaper account of an important local event, or who has heard it casually discussed by his neighbors, and who, on his voir dire examination, states that he has not formed an opinion, is either at heart a criminal, who seeks a position as a juror for a sinister purpose, or he is an imbecile, who is incapable of forming a mental conception; and in either case ought to be discharged on his mere statement that the perusal of the facts in a newspaper or the recital thereof by his neighbors produced in his mind no opinion as to the merits of the case. The nature of the opinion entertained determines the qualifications or ineligibility of the person possessing it to serve as a juror in the trial of a cause, and the quantity of evidence necessary to remove it determines its character. Newspaper accounts of important events contain a mere summary of the facts, stated in the briefest manner possible intelligently to impart the news. Though the perusal of such accounts will ordinarily create in the mind of an intelligent reader an opinion as to the merits of the cause, which requires evidence to remove, such conclusion is not usually deep or lasting, because the information on which it is based is meager: *State* v. *Ingram,* 23 Or. 434 (31 Pac. 1049) ; *State* v. *Kelly,* 28 Or. 225 (42 Pac. 217, 52 Am. St. Rep. 777) ; *State* v. *Olberman,* 33 Or. 556 (55 Pac. 866) ; *State* v. *Savage,* 36 Or. 191 (60 Pac. 610, 61 Pac. 1128) ; *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520) ; *State* v. *Armstrong,* 43 Or. 207 (73 Pac. 1022). So, too, the statement of such facts as a matter of news by a disinterested person necessarily creates in the mind of the hearer an opinion that is changeable in the same manner and for similar reasons.

It is possible that many related facts, subordinate to the principal inquiry, might be heard by a person in court during a trial, or outside thereof from witnesses, without creating in the mind of the hearer such a fixed and positive opinion as to dis-

qualify him from serving as a juror in a retrial of the cause. If, however, such person was in court at a former trial, and heard witnesses testify concerning the vital fact at issue, upon the truth or falsity of which the verdict necessarily depended; or if he heard such facts related by interested witnesses, whose statements he believed; or if he heard the jurors at such trial discussing the merits of the case, and from what he heard formed a fixed opinion which required evidence to remove—such person at a retrial of the cause is not an impartial juror, and when called as such, and objected to for actual bias, the challenge ought not to be controverted by opposing counsel or denied by a court. In *State* v. *Saunders,* 14 Or. 300 (12 Pac. 441), it is intimated that a person who had heard the testimony in any case, had read a detailed statement of it, or had been told it by some one claiming to know, was incompetent to serve as a juror. In *Kumli* v. *Southern Pac. Co.* 21 Or. 505 (28 Pac. 637), it is suggested that whether a person called as a juror can disregard an opinion he has formed depends in part upon the source of the information upon which such conclusion is based. In *State* v. *Brown,* 28 Or. 147 (41 Pac. 1042), it is argued that where a juror knows the facts involved in a cause, upon which he has formed an opinion, a challenge for actual bias ought to be sustained. In *State* v. *Morse,* 35 Or. 462 (57 Pac. 631), a juror on his voir dire, having testified "that he had heard a little of the testimony on a former trial, and had heard a good deal on the outside," from which he had formed an opinion that he thought would hinder him from giving the accused a fair and impartial trial, said if he was accepted "he should certainly endeavor to try the case fairly and impartially upon the testimony of the witnesses and the law as given by the court, although he felt that his previous opinion would make it more difficult for him to do so," was held competent. In that case the "little testimony" the juryman had heard in court on the former trial may have been unimportant, or not such as necessarily determined the cause. The "great deal" he had heard on the outside was not testimony, but hearsay, and may not have been a statement of the material facts, for in speaking of the persons' whom he had heard discuss

the matter he said he "did not know whether they were witnesses or not."

In the case at bar, though the bill of exceptions shows that objections were made to several persons called as jurors, each was excused by defendant's counsel except the last, when, having exhausted all their peremptory challenges, they were compelled to accept him. We shall call attention to the testimony of only two of such persons. The judge's certificate, appended to the bill of exceptions, does not state that the entire testimony given by the persons called as jurors is included in the transcript. That it is not so incorporated is negatived by the bill of exceptions, from which the following extract is taken: "W. C. White was examined as a juror, and, among other [things] testified as follows." Here appear what purport to be replies to preliminary interrogatories, which are omitted, followed by questions and answers, from which we summarize: This person stated on his voir dire examination that he was in court at a former trial of this cause, when Mrs. Curtis, widow of the deceased, gave her testimony, but he did not know that he heard all of it, for it was difficult for him to hear what she said; that he had heard some of the witnesses who appeared at the former trial of this action detail the testimony given by them; that from what he had heard he had formed a fixed and positive opinion, which would require a good deal of evidence to remove; that, if the defendant could produce evidence to establish his guilt or innocence, he would change his opinion, but that he believed he could give him an impartial trial on the evidence which he might hear in court. B. Terrill testified on his voir dire examination that he had talked with a good many witnesses who gave testimony at the former trial of this cause, and also with some of the jurors who returned the verdict therein; that such persons detailed to him, as nearly as they could, the facts involved; that, having confidence in what they said, he had formed a fixed opinion as to the merits of the case, which would require strong testimony to overthrow, and which, to him, prevented the parties from starting on an equal race in the trial; but that, if accepted as a juror, he could lay aside such opinion, and try the case fairly and impartially. As we remember the testimony given at

the former trial (*State* v. *Miller,* 43 Or. 325, 74 Pac. 658) by Mrs. Curtis, who heard the fatal shots fired that made her a widow, we do not believe any person could listen to her recital of the facts without forming such an opinion as to render him biased as to the merits of the case. Nor could a person hear the witnesses or the jurors tell the story of the homicide, as it was unfolded in court, without forming such an opinion as to the guilt or innocence of the defendant as to render him prejudiced in the matter.

Other alleged errors are assigned, but deeming them unimportant, the judgment is reversed, and a new trial ordered.

Reversed.

Decided 3 July, rehearing denied 28 August, 1905.