108 March 21, 2024 No. 6

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JULIO CESAR VILLEDA,
*Respondent on Review.*

(CC 19CR08759; 20CR10192)
(CA A175679 (Control); A175680) (SC S070188)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 9, 2023.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Deputy Defender, Criminal Appellate Section.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Gary Walter Higgs.

Rosalind M. Lee, Oregon Criminal Defense Lawyers Association, Eugene, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association. Also on the brief were Stacy M. Du Clos, Nora E. Coon, and Daniel C. Silberman.

Shenoa Payne, Shenoa Payne Attorney at Law PC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

* Appeal from Washington County Circuit Court, Oscar Garcia, Judge. 324 Or App 502, 526 P3d 1213 (2023).

BUSHONG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**BUSHONG, J.**

A jury convicted defendant of two domestic violence offenses, acquitting him on more serious charges, including rape, sodomy, and sexual abuse of his domestic partner. Before trial, during jury selection, a prospective juror stated that she did not think that she could be fair and impartial because she had several close friends who had been sexually assaulted and that would influence her if she sat on the jury. The trial court denied defendant's request to excuse that prospective juror for actual bias after hearing her responses to additional questions posed by the court and the prosecutor. The prospective juror did not sit on the jury that decided the case because defendant used one of his peremptory challenges to excuse her. In appealing his convictions, defendant contended that the trial court abused its discretion in denying defendant's for-cause challenge to that juror. The Court of Appeals agreed and further concluded that the error was prejudicial because it resulted in the loss of a peremptory challenge. *State v. Villeda*, 324 Or App 502, 526 P3d 1213 (2023).

We agree with the Court of Appeals that the trial court abused its discretion in denying defendant's challenge for cause, but we conclude that the error did not prejudice the defendant "in respect to a substantial right" as required for reversal under ORS 131.035. As explained below, the error did not interfere with defendant's right to a fair trial before impartial jurors, and whatever impact the error may have had on how defendant used his peremptory challenges did not prejudice him in respect to a substantial right. Accordingly, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

## I.   BACKGROUND

A.   *Standard of Review*

We review the trial court's ruling on a challenge to a juror for cause for abuse of discretion. *State v. Fanus*, 336 Or 63, 83, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004). Because the trial court has the advantage of observing the juror's demeanor, a trial court's decision on a challenge for cause "is entitled to deference and will not be disturbed absent a manifest abuse of discretion." *Id.* The trial court's

discretion, however, is limited by the law that governs challenges for cause for actual bias. *See* ORCP 57 D(1)(g) (defining actual bias);[1] ORS 136.210(1) (adopting ORCP 57 D(1)(g) standards for jury selection in criminal cases); *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998) (describing abuse of discretion standard). The fact that a juror "has preconceived ideas about a matter relevant to the case is not determinative." *Barone*, 328 Or at 74. Rather, the test "is whether the prospective juror's ideas or opinions would impair substantially [their] performance of the duties of a juror to decide the case fairly and impartially on the evidence presented in court." *Id.*

B. *The Jury Selection Process in This Case*

  The relevant facts—involving the steps taken by the trial court during the jury selection process, also known as *voir dire*—are procedural and undisputed.

  At the start of the jury selection process, the court read the charges in the indictment and asked if any of the prospective jurors had personal views about this type of case—involving allegations of domestic violence, including charges of rape, sodomy, and physical assault—that might affect their ability to be fair and impartial jurors. Juror 155 raised her hand. When defense counsel asked juror 155 why she might not be able to be fair and impartial, she stated, "I have several close friends who have been sexually assaulted or raped" and "that would influence how I would participate in this." When asked to explain further, juror 155 stated, "Well, I think generally when I hear about cases of sexual

---

[1] ORCP 57 D(1)(g) provides that challenges for cause may be taken for actual bias. The rule defines actual bias as

"the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror. Actual bias may be in reference to the action; either party to the action; the sex of the party, the party's attorney, a victim, or a witness; or a racial or ethnic group of which the party, the party's attorney, a victim, or a witness is a member, or is perceived to be a member. A challenge for actual bias may be taken for the cause mentioned in this paragraph, but on the trial of such challenge, although it should appear that the juror challenged has formed or expressed opinion upon the merits of the cause from what the juror may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

abuse or rape, I tend to give credibility to the survivor. And, so, while I can still presume that [defendant] is innocent, I think my natural inclination is [to] stand with the survivor."

When defense counsel asked the juror if she could put that view aside, she stated, "I'm not sure if I could put it aside." Defense counsel then asked the juror if she had "a reasonable doubt about [her] ability to be fair to [defendant] in this case," and she replied, "Yes." Defense counsel then asked the court to excuse juror 155 for cause.

The court did not immediately rule on that request. Instead, the court spoke to the pool of prospective jurors about the role of the jury, explaining that, although the circumstances of the case might remind a person of their own life experiences, that does not necessarily mean that the person cannot be a fair and impartial juror. The court then asked juror 155 the following question:

"Do you think you could put those feelings aside \*\*\* and be neutral, fair when you hear the evidence here \*\*\* and then if it's creeping back, wait, I know I have these feelings, but I can't let them—no, no, I got to listen. I got to be fair to both sides \*\*\*.

"And then hear the evidence and then follow the law as I give it to you and just in essence, you know, to be fair. I mean, do you think you could do that \*\*\* if you were a juror in this case?"

Juror 155 replied:

"Yes, I think so. I think, again, that my natural inclination would be to lend more support to the victim survivor, but I think I could check my biases and my past understanding of these issues."

At that point, the court permitted questioning of the prospective jurors to continue.

Later, defense counsel asked the prospective jurors if anyone believed that a woman would not lie about being raped. Juror 155 raised her hand and confirmed that her concern was the same as what she previously explained. Juror 155 also indicated that she agreed with defense counsel's statements that a woman would not lie about being raped by someone that she was in a relationship with, and that a

woman would not lie "in court" about being raped. Defense counsel then asked juror 155 if she thought she would be a good juror for this case, and she replied that she thought she would be "biased" or "really emotional."

The court and prosecutor then inquired further:

"THE COURT:  Ma'am, ***we gave you a chance to hear other folks***? And again, you know, you heard my definition of what we're looking for, everybody here *** to be fair and *** kind of keep *** those emotions aside if you can***. So, do you think, ma'am, that you can do it in this case?

"[JUROR 155]:  I don't think I could keep my emotions to the side. Even just being in the room is just difficult.

"THE COURT:  And would those emotions not allow you to be fair to one side.

"[JUROR 155]:  Yeah. I don't think they would allow me to be fair."

The court then allowed the state to inquire further:

"[THE PROSECUTOR]:  Thank you. [Juror 155], I can see you're getting a little upset, and I totally understand. The good news is that we're not here to decide whether or not rape is a crime. There are certainly—it's a crime within the books, and there are other heinous crimes that definitely happen in the courthouse ***would be hard to listen to. There's child abuse. There's murder. And nobody is asking you not to be a human when you're hearing that. The question is when the judge tells you that, you know, you're to follow the law and to weigh the evidence as it's presented, do you think that's something you could do?

"[JUROR 155]:  To weigh the evidence as it's presented?

"[THE PROSECUTOR]:  Mm-hmm. The evidence and the law as its presented.

"[JUROR 155]:  Yes."

Defense counsel again challenged juror 155 for cause, and the court denied the challenge. The court also denied defense counsel's request for additional peremptory challenges. At the end of the jury selection process, defense counsel used one of defendant's six peremptory challenges to excuse juror 155 and used the other five peremptory

challenges to excuse other prospective jurors. Defense counsel did not challenge for cause any of the jurors who were eventually seated on the jury, although counsel did state that the defense would have used peremptory challenges to excuse jurors 128 and 305 if two more peremptory challenges had been available.[2] Defense counsel did not challenge those jurors for cause, contend that they did not qualify as fair and impartial jurors, or explain why he would have excused those jurors peremptorily if he had more peremptory challenges.

At the conclusion of the trial, the jury found defendant guilty of endangering a person protected by an order under the Family Abuse Prevention Act, ORS 163.192, and assault in the fourth degree constituting domestic violence, ORS 163.160(2). The jury found defendant not guilty on the other charged offenses, including rape, sodomy, and sexual abuse of his domestic partner.

Defendant appealed his convictions, and the Court of Appeals reversed, concluding that the trial court abused its discretion in rejecting defendant's for-cause challenge to juror 155, *Villeda*, 324 Or App at 512, and that the consequence of that error "was to force defendant to use a peremptory challenge, effectively reducing the number of peremptory challenges available for other prospective jurors." *Id.* at 514. That amounted to prejudice within the meaning of Article VII (Amended), section 3, of the Oregon Constitution, the court reasoned, in part based on this court's description of "prejudice" in *State v. Montez*, 309 Or 564, 577, 789 P2d 1352 (1990). Thus, the court concluded that "prejudice arises from the erroneous rejection of a for-cause juror challenge if, as here, the defendant makes a record that a lost peremptory challenge would otherwise have been used against a juror who sat." *Villeda*, 324 Or App at 514.

## II.   DISCUSSION

### A.   *Defendant's Challenge for Cause Based on Actual Bias*

In all criminal prosecutions, the defendant has the right to a trial "by an impartial jury." Or Const, Art I, § 11. That right "is a matter which is and should be guarded

---

[2]  Juror 305 sat on the jury that decided the case. Juror 128 was empaneled to sit on the jury but was later released due to illness and replaced by an alternate juror.

zealously by the courts, and the courts should guarantee that juries consist of impartial persons." *Lambert v. Srs. of St. Joseph*, 277 Or 223, 230, 560 P2d 262 (1977). "The test of a juror's disqualification [for actual bias] is the probability of bias or prejudice" as determined by the trial court. *Montez*, 309 Or at 575; *see also State v. Lotches*, 331 Or 455, 474, 17 P3d 1045 (2000) (stating that the trial court determines excusal for actual bias "by looking at the totality of the potential juror's *voir dire* testimony to discern whether it suggests the probability of bias") (internal quotation marks omitted).

In considering the totality of the circumstances, we have explained that a court must give more weight to a juror's unprompted statements of bias, and less weight to any statements made in response to statements or leading questions by counsel or the court designed to "rehabilitate" a juror who had disclosed a preexisting bias. For example, in *Lambert*, at the beginning of the jury selection process in a medical malpractice case, one prospective juror indicated that he knew one of the defendant doctors and stated that he would be biased in favor of that doctor. 277 Or at 226. Because the plaintiffs had exhausted their peremptory challenges, that juror was seated on the jury, which returned a verdict for the defendants.

On appeal, we reversed, concluding that the trial court should have excused that juror for cause because his "substantial probability of bias" deprived the plaintiffs "of the right to have their issues determined by an impartial juror." *Id.* at 231. We explained that the trial court's failure to excuse the juror for cause amounted to "a manifest abuse of the discretion vested in the court," because a juror's "[i]nitial reactions or answers given in voir dire without undue debate and confinement of issues should be afforded much greater weight in determining [the juror's] true frame of mind." *Id.* That is because "[e]arly answers or reactions more truly indicate the juror's frame of mind as opposed to later generalized statements that the juror would be fair." *Id.* Thus, we concluded that answers given by a juror early in the jury selection process—before any efforts at rehabilitating the juror—must be given "[s]pecial emphasis" or

"particular significance" in assessing a prospective juror's actual bias. *Id.*

We apply the same principles in criminal cases. For example, in *State v. Nefstad*, 309 Or 523, 531, 789 P2d 1326 (1990), a capital case, we held that a trial court did not err in excusing one prospective juror for actual bias where, "[w]ithout equivocation, [the juror] explained his views and the effect that they would have on his ability to be an impartial juror at the beginning of his voir dire testimony." The defendant in *Nefstad* argued that the trial court had erred in excusing the prospective juror for cause because the defendant had not been "given a chance to rehabilitate [the juror] on issues the trial court felt provided a legal basis for exclusion" in violation of his statutory and constitutional rights. *Id.* We disagreed, noting that ORS 136.210(1) gave the defendant a statutory right to *examine* prospective jurors as to their qualifications, and the defendant's counsel had been given two opportunities to question the juror. *Id.* at 531-32. Moreover, we explained, examining a juror is different from *rehabilitating* the juror, because "the purpose of the voir dire examination was investigation, not persuasion." *Id.* at 533. We therefore concluded, "'[w]hen it satisfactorily appears from the examination of a person called as a juror that [they possess] such a state of mind that [they] cannot try the issues impartially, the introduction of further testimony would be superfluous.'" *Id.* (quoting *State v. Miller*, 46 Or 485, 487, 81 P 363 (1905)).[3]

Thus, we recognized in both *Lambert* and *Nefstad* that (1) a party does not have a right to rehabilitate a biased juror; (2) a juror's unprompted statements of bias should be given special weight; and (3) attempting to persuade a juror that they could be fair despite their expressed biases interferes with the court's effort to assess whether the prospective

---

[3] We also noted that the statements of another prospective juror in *Nefstad* "were equivocal" and that that juror had "given admittedly contradictory responses" regarding his personal views about the death penalty. *Id.* at 536, 538. We concluded that the trial court did not abuse its discretion in dismissing that juror for actual bias because the juror's *voir dire* testimony, taken as a whole, "established that his views on the death penalty would have interfered substantially with and impaired his performance as a juror in accordance with his oath and the court's instructions." *Id.* at 538. We explained that a prospective juror in a capital case "may be excused on [those] grounds without violating the defendant's right to an impartial jury." *Id.*

juror's "probability of bias" is sufficient to excuse the juror for cause.

Legal scholars and empirical studies support those conclusions. One commentator observed that juror rehabilitation "gets little support from social science research as a method to ensure impartial juries." Kathleen Wright, *Friends and Foes in the Jury Box: Walls v. Kim and the Mission to Stop Improper Juror Rehabilitation*, 53 Mercer L Rev 929, 941 (2002) (examining the practice of juror rehabilitation in Georgia in the context of a specific case).[4] Other research has confirmed what we recognized in *Lambert*: Juror "rehabilitation" is ineffective at best and likely detrimental to the court's goal of ensuring that all jurors are fair and impartial.[5] *See* Christopher A. Cosper, *Rehabilitation of the Juror Rehabilitation Doctrine*, 37 Ga L Rev 1471, 1487 (2003) (noting that judicial rehabilitation of jurors is a common tool that is used to increase the efficiency of trials and advocating for "close scrutiny" of the practice of juror rehabilitation); Barbara O'Brien & Catherine Grosso, *Judges, Lawyers, and Willing Jurors: A Tale of Two Jury Selections*, 98 Chi Kent L Rev 107, 112 (2023) (noting that, "[w]hen jurors say something to suggest a bias of any sort, judges often attempt to rehabilitate that juror" but concluding that that effort is ineffective in addressing juror bias); Jessica M.

---

[4] In the case addressed by the Wright article, *Walls v. Kim*, 250 Ga App 259, 259, 549 SE2d 797, 799 (2001), *aff'd*, 275 Ga 177, 563 SE2d 847 (2002), the Georgia Court of Appeals noted that some trial judges attempt to "rehabilitate" jurors by asking them if they can set aside their biases and decide the case solely on the evidence and the law, and then retain "these purportedly rehabilitated jurors." The court explained that "the better practice is for judges *** to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call." *Id.* 250 Ga at 260, 549 SE2d at 799.

[5] Several commentators have noted that juror rehabilitation is especially ineffective when it is done by a judge. *See* Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv L & Pol'y Rev 149, 160 (2010) (stating that "empirical research suggests that potential jurors respond more candidly and are less likely to give socially desirable answers to questions from lawyers than from judges" (citing Susan E. Jones, *Judge- Versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor*, 11 Law & Hum Behav 131 (1987))); Caroline B. Crocker & Margaret Bull Kovera, *The Effects of Rehabilitative Voir Dire on Juror Bias and Decision Making*, 34 Law & Hum Behav 212, 213 (2010) (describing an empirical study that revealed that, "not only do venirepersons provide less candid information to judges than to attorneys, but also judges elicit inaccurate information from venirepersons due to their choice of questions").

Salerno, John C. Campbell, Hannah J. Phalen, Samantha R. Bean, Valerie P. Hans, Daphna Spivack & Lee Ross, *The Impact of Minimal Versus Extended Voir Dire and Judicial Rehabilitation on Mock Jurors' Decisions in Civil Cases*, 45 Law & Hum Behav 336, 336 (2021) (noting that "[j]udicial rehabilitation did not reduce the biasing impact of their preexisting attitudes on case judgments but did result in mock jurors reporting that they were less biased, despite evidence that judicial rehabilitation did not *actually* reduce their bias" (emphasis in original)).[6]

As one study explained, "[i]n a typical juror rehabilitation, the judge asks jurors individually, in front of the remaining panel, whether they can set aside bias they have already confessed and be fair. Social science evidence strongly [suggests] *** that jurors confronted with this question from the bench almost invariably say, yes." Wright at 941-42 (internal quotation marks omitted). Those results support this court's conclusion in *Lambert* that a juror's unprompted statements regarding bias must be given "much greater weight" than statements made after the court or counsel attempt to "rehabilitate" the juror by asking whether the juror can set aside her bias and be fair. 277 Or at 231. Posing close-ended questions to "rehabilitate" a juror is an ineffective way to discern a juror's actual biases and achieve the goal of selecting a fair and impartial jury.

In this case, the trial judge gave greater weight to juror 155's responses to the judge's questions, and, to some extent, the prosecutor's follow-up question asking the juror if she could set aside her expressed bias and be fair, than to her initial, unprompted statements of bias. The trial court's reliance on the juror's responses to those questions and its failure to give "much greater weight" to the juror's unprompted statements about her bias at the start of the jury selection process exceeded the range of discretion

---

[6] Although this case involves a juror's express, rather than implicit, bias, commentators have noted that juror rehabilitation is especially ineffective to address a juror's implicit bias. *See* Bennett at 160 (stating that the question often asked by judges to rehabilitate a juror—Can you be fair and impartial in this case?—"does not begin to address implicit bias, which by its nature is not consciously known to the prospective juror"); *id.* (noting that "the trial judge is probably the person in the courtroom least able to discover implicit bias by questioning jurors").

afforded under *Lambert*. Accordingly, we agree with the Court of Appeals that the trial court abused its discretion in denying defendant's for-cause challenge to juror 155.

B.  *Whether the Error Is Grounds for Reversal*

In criminal cases, an error is grounds for reversal only if it "has prejudiced the defendant in respect to a substantial right." ORS 131.035; *see also State v. Davis*, 336 Or 19, 28, 77 P3d 1111 (2003) (stating that, under Article VII (Amended), section 3, of the Oregon Constitution, this court "must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, the court is of the opinion that the judgment 'was such as should have been rendered in the case'"). In *Davis*, we explained that assessing whether there is little likelihood that an error affected the outcome is the "constitutional test for affirmance despite error." 336 Or at 32.

Although ORS 131.035—whether the error "has prejudiced the defendant in respect to a substantial right"—is worded differently, we noted in *Davis* that the constitutional analysis "is similar to" the analysis required by statutes that "preclude reversal of a judgment for trial error in the absence of a demonstration that the error affected the substantial right of a party." 336 Or at 29 n 7. In another case, we cited both provisions without identifying any meaningful difference between them, and no party in this case contends that there is any difference between the statutory and constitutional standards. *See State v. Dulfu*, 363 Or 647, 676, 426 P3d 641 (2018) (citing Or Const, Art VII (Amended), § 3, and ORS 131.035 in determining whether an error was harmless). Accordingly, in this case, our conclusion that the erroneous denial of defendant's for-cause challenge did not prejudice defendant in respect to a substantial right as required for reversal under ORS 131.035 also means that there was little likelihood that the error affected the outcome, consistent with the constitutional test for affirmance despite error described in *Davis*.

The state contends that the erroneous denial of defendant's for-cause challenge to juror 155 was not prejudicial under *State v. Megorden*, 49 Or 259, 88 P 306 (1907), and

*Barone.* We stated in *Megorden* that the erroneous denial of a challenge for cause to a juror excused peremptorily is not prejudicial unless "the challenger was compelled to accept an objectionable juror." 49 Or at 263-64. We concluded in *Barone* that peremptory challenges "have no constitutional significance in and of themselves, and the fact that a defendant is forced to use them to achieve an impartial jury does not offend the right to a fair trial." 328 Or at 72-73. The state contends that an "objectionable juror" for purposes of *Megorden* is a juror who should have been excluded for cause, and that any "loss" of a peremptory challenge in this context cannot be prejudicial under *Barone* unless the error deprived a defendant of his right to a fair trial.

Defendant counters that the erroneous denial of his for-cause challenge was prejudicial because it caused him to use a peremptory challenge on juror 155 that he otherwise could have used on one of two other jurors that he identified at the time, and one of those jurors served on the jury. Defendant argues that this "loss" of a peremptory challenge is prejudicial automatically under *Highway Commission v. Walker et ux*, 232 Or 478, 485, 376 P2d 96 (1962), and that we confirmed that presumption of prejudice in *Montez*. Alternatively, defendant contends that our prior cases have treated any juror that a party would have excused peremptorily as an "objectionable juror" for purposes of *Megorden*, making the erroneous denial of defendant's for-cause challenge in this case prejudicial because it forced him to accept an "objectionable juror" that he would have been able to excuse peremptorily if the court had not denied his for-cause challenge.[7]

The state disagrees with defendant's understanding of *Megorden* and suggests that we should overrule *Walker* if we conclude that it conflicts with this court's decisions in *Megorden* and *Barone*. As we shall explain, we conclude that the trial court's erroneous denial of defendant's challenge to juror 155 for cause did not "prejudice the defendant in respect to a substantial right" as required for reversal under

___

[7] Defendant assigned error solely to the trial court's decision not to excuse juror 155 for cause. Defendant did not separately assign error to the trial court's "rehabilitation" statements during *voir dire*. Accordingly, we are not called upon to decided how prejudice is to be evaluated in that circumstance.

ORS 131.035. To reach that conclusion, we need not overrule *Walker* because the error in that case is different than the error in this case.

We begin with defendant's argument that his "loss" of a peremptory challenge is presumed to be prejudicial under *Walker*. In that condemnation action, both parties had a statutory allotment of three peremptory challenges. After each party had exercised two peremptory challenges, the plaintiff—the State Highway Commission—declined to use its final challenge on any of the 12 jurors that had been seated on the panel. Defendants then exercised their third peremptory challenge, and a new juror was seated. The state then attempted to exercise its third peremptory challenge on the new juror, but the trial court ruled that the state had waived its third peremptory challenge by declining to exercise it on any of the jurors on the previous panel. The only issue on appeal was whether "the trial [court] erred when [it] refused to permit the state to exercise its third peremptory challenge." *Walker*, 232 Or at 481.

To resolve that question, we cited the general rule that applies when the parties "exercise their peremptory challenges alternately, beginning with the plaintiff and continuing until one of them is satisfied with the jury as it is then constituted and waives his next challenge." *Id.* at 484. When that occurs, we explained, a peremptory challenge "waived by either party upon its becoming satisfied with the jury as then constituted may later be exercised upon a juror who is called to the box subsequent to the time the challenge was waived." *Id.* We concluded that the trial court had erred because it did not allow the state to exercise its third peremptory challenge "upon a juror who [was] called to the box" *after* the state had passed on the 12 jurors who had been seated on the previous panel. *Id.* We said that the error "should be deemed prejudicial automatically" because, otherwise, the statutory right to three peremptory challenges "is an empty one." *Id.* at 485.

Thus, the error that was presumed prejudicial in *Walker* was the trial court's determination that the state had "waived" one of the three peremptory challenges allotted to it by statute. The error in this case is different. Here,

we agree with the Court of Appeals that the trial court erred in denying defendant's for-cause challenge to juror 155. But the trial court did not find that defendant had "waived" any of the six peremptory challenges allotted to him by statute, as in *Walker*. Because defendant was able to use all six peremptory challenges allotted to him by statute, the error in this case is different from the error that we presumed to be prejudicial in *Walker*.

In addition, we determined in *Baker v. English*, 324 Or 585, 932 P2d 57 (1997), that *Walker*'s presumptive prejudice rule should be limited to the circumstances presented in that case. In *Baker*, we noted that *Walker* had identified "a narrow exception to the general principle that a party's rights ordinarily are not substantially affected by an error that likely did not affect the outcome of the case," but we indicated that *Walker*'s "*per se* rule specifically for the purpose of analyzing error pertaining to peremptory challenges *** should not be interpreted to reach beyond that context." *Id.* at 592 n 6. Accordingly, we decline to extend *Walker*'s *per se* rule beyond the context of that case. Thus, the only error pertaining to peremptory challenges that will be "deemed prejudicial automatically" under *Walker* is erroneously denying a party the *number* of peremptory challenges allotted by statute. *See also State v. Durham*, 177 Or 574, 164 P2d 448 (1945) (holding that the trial court committed reversible error "in denying [the] defendant the right of peremptory challenge" when the court refused to allow the defendant any peremptory challenges in selecting a jury for sentencing under Oregon's Habitual Criminal Act).[8]

There is no such error here. Defendant used all six of the peremptory challenges allotted to him by statute, and he does not contend in this court that the trial court erred in refusing to allow him more than six peremptory

---

[8] The Habitual Criminal Act applied in *Durham* was a 1927 statute that provided for an enhanced sentence of up to life imprisonment for a felony conviction if the defendant had three prior felony convictions. The trial court in *Durham* empaneled a jury at the time of sentencing to consider whether defendant had been convicted of the requisite four felonies (including the current charge), but the trial court determined in that special proceeding that defendant "was not entitled to any peremptory challenge[s]." 177 Or at 579. This court reversed, concluding that the legislature did not intend to deny defendant the right of peremptory challenge when it enacted the Habitual Criminal Act. *Id.* at 581.

challenges. Defendant contends, however, that he was *effectively* denied the use of six peremptory challenges because he was "forced" to use a peremptory challenge on juror 155, leaving him with only five peremptory challenges to use on other jurors. Defendant argues that we confirmed in *Montez* that such a "loss" of a peremptory challenge is grounds for reversal. We disagree with both contentions.

The erroneous denial of defendant's for-cause challenge did not "force" him to use a peremptory challenge on juror 155. Peremptory challenges are granted by statute "as [a] matter of favor" or as a "privilege" to litigants. *State v. White*, 48 Or 416, 425, 87 P 137 (1906). A peremptory challenge is something that a party may "use at [the party's] own discretion." *State v. Humphrey*, 63 Or 540, 544, 128 P 824 (1912). Denying a for-cause challenge does not "force" a party to use a peremptory challenge to excuse a juror it had challenged for cause because a party might choose *not* to use a peremptory challenge to excuse that juror. For example, in *Humphrey*, the defendants chose to leave on the jury a juror that they had previously challenged for cause, even though they still had peremptory challenges available at the end of jury selection. *Id.* at 544-45 (noting that the defendants had challenged six jurors for cause, used peremptory challenges to excuse five of those jurors, and did not use "any of the remaining seven peremptory challenges allowed them by statute" to excuse the other juror that they had challenged for cause).

If we assume that defendant's objective was to accomplish what he would have accomplished if the trial court had dismissed juror 155 for cause—removing that juror from the jury—then the only way he could accomplish that result was to use one of his peremptory challenges to remove that juror. As explained below, we have described that use of a peremptory challenge as "curing" the error, but we have never described it as a prejudicial denial of a substantial right. Defendant argues that we "confirmed" in *Montez*, a capital case, that an erroneous denial of a challenge for cause is prejudicial error where a party uses one of the allotted peremptory challenges to excuse the juror in question, leaving it with one less peremptory challenge

to exercise on other jurors. That argument relies on our "exhaustive discussion of the merits" of a for-cause challenge to a prospective juror in *Montez*, suggesting that we undertook that discussion because we were "apparently satisfied that the prejudice issue did not present an easy way out." But defendant reads too much into the fact that we reviewed the merits of the for-cause challenges in *Montez*.

There, the defendant contended that the trial court erred in excluding two prospective jurors who had expressed opposition to the death penalty, and in denying the defendant's for-cause challenges with respect to two other prospective jurors who had expressed support for the death penalty. The defendant argued that those decisions "denied him his right to an impartial jury" in violation of the Oregon and United States Constitutions. *Montez*, 309 Or at 573. We began our discussion on the merits of the defendant's challenge to one of those prospective jurors with the observation that, "[b]ecause [that juror] did not serve on the jury, the only 'prejudice' to [the] defendant was that [the] defendant had no remaining peremptory challenge to later excuse [another prospective juror], who did serve on the jury." *Id.* at 577.

Stating that "the only 'prejudice'" to the defendant was the fact that he had no remaining peremptory challenge to excuse a different juror does not mean that we had decided that the error was prejudicial. Ultimately, we found no basis in the record "to conclude that the trial court's decision not to excuse [that prospective juror] for cause was reversible error." *Id.* at 593. We further concluded that the trial court did not abuse its discretion "in refusing to excuse [the other juror] for cause." *Id.* at 594. Because we found no error in the trial court's denial of any of the defendant's for-cause challenges in *Montez*, it was not necessary for us to decide whether any error was prejudicial. *See Parks v. Farmers Ins. Co.*, 347 Or 374, 384, 227 P3d 1127 (2009) (the fact that the court previously mentioned without deciding an issue "simply reflects" that we "had no reason to consider the issue").

Defendant alternatively contends that, because the error in this case resulted in seating a juror that he would

have excused peremptorily, it was prejudicial under *Megorden*, because he was "compelled to accept an objectionable juror." 49 Or at 263-64. Defendant asserts that our case law has recognized that any juror whom a party would have excused peremptorily is an "objectionable" juror for purposes of establishing prejudice under *Megorden*. But, as explained below, none of the cases cited by defendant held that an "objectionable juror" for purposes of *Megorden* is a juror whom a party would have excused peremptorily if another challenge had been available. We begin our discussion of those cases with *Ford v. Umatilla County*, 15 Or 313, 16 P 33, *reh'g den*, 15 Or 323, 16 P 38 (1887), which does provide some support for defendant's argument.

The plaintiff in *Ford* sued Umatilla County for damages after a bridge collapsed while plaintiff was driving his team of horses and a wagon across it, killing two horses, and badly damaging his personal property. During jury selection, plaintiff's counsel argued that jurors who were taxpayers in Umatilla County should be excused for implied bias. The trial court generally agreed and excused several prospective jurors on that basis.[9] The county then sought to excuse a juror for cause on the same grounds; plaintiff objected, and the trial court sustained the objection, denying the county's for-cause challenge. The county then used a peremptory challenge to remove that juror and contended on appeal that the trial court had committed reversible error in denying its challenge for cause. This court disagreed, concluding that the county, "having afterwards challenged the juror peremptorily, thereby waived [its] challenge for cause." 15 Or at 322. The county moved for rehearing, but the court adhered to its ruling, noting that the only reason given for excusing the juror for cause was that he was a taxpayer in Umatilla County. The court explained that "being a tax-payer of the county interested him in deciding in [the county's] favor" so the county "must have had other reasons for objecting to his sitting." *Ford v. Umatilla County*, 15 Or

---

[9] Unlike actual bias, a challenge for cause for "implied basis" is based solely on a prospective juror's relationship to the parties involved, prior involvement in the case, or interest in the outcome of the case. *See* ORCP 57 D(1)(c) - (f) (listing reasons). The *Ford* court did not explain why it thought that being a taxpayer of a county that had been sued for damages gave rise to implied bias; taxpayer status would not be a basis for a challenge for cause for implied bias under current law.

323, 325-26, 16 P 38 (1887) (on petition for rehearing). Under those circumstances, the court continued, the county "was not compelled to resort to a peremptory challenge in order to exclude the juror for grounds for which he had been challenged for cause." *Id.* at 325. Rather, the court concluded, if a party chooses to use a peremptory challenge to excuse a juror for reasons *other* than the reasons given for challenging the juror for cause, the party "should be deemed to have waived his right to insist upon the former objection." *Id.* at 326.

The court then stated:

> "If the grounds of the challenge for cause had been of such a nature as would have been likely to prejudice the juror against [the county], and [the county] had been put to its peremptory challenge in order to exclude him, *there would be more reason for claiming that the error was prejudicial.*"

*Id.* (emphasis added). But the court went on to explain that, "under the circumstances, as they exist, no such presumption can be drawn." *Id.* Given that context, the statement that there would be "more reason" to find prejudicial error under circumstances not presented in that case is clearly *dicta* and, as our subsequent cases (discussed next) demonstrate, we have never adopted that *dicta* in determining whether using a peremptory challenge to excuse a juror who should have been excused for cause makes the error prejudicial.

In some cases, we have indicated that using a peremptory challenge to excuse a juror who should have been excused for cause "cures" the error. *See, e.g.*, *Humphrey*, 63 Or at 544 ("It is well settled that, although the court sitting in the trial of the cause may have erred in overruling a challenge for cause, yet the error is cured by the exercise of a peremptory challenge against the juror in question."); *Twitchell v. Thompson*, 78 Or 285, 289, 153 P 45 (1915) (where plaintiff used peremptory challenges to excuse jurors that plaintiff had challenged for cause, any claim that the court erred in denying the for-cause challenges was "disposed of" by the decision in *Humphrey*); *State v. Layton*, 174 Or 217, 234, 148 P2d 522 (1944) (rejecting the defendant's argument that the trial court erred in denying his for-cause challenges to two jurors because defendant removed those

jurors peremptorily, so "[i]f any error was committed, it was cured by the exercise of the peremptory challenges").

Other cases have framed the issue in terms of waiver or lack of prejudice, but none followed the *dicta* in *Ford*. For example, in *State v. Rathie*, 101 Or 339, 349, 199 P 169 (1921), *overruled in part on other grounds by State v. Brewton*, 238 Or 590, 395 P2d 874 (1964), we stated that "[i]t is the rule in this state that error of the court in refusing to allow a challenge to a juror for cause is waived if the party objecting, after exhausting his peremptory challenges, accepts without objection other jurors to complete the panel." In *State v. Douglas*, 310 Or 438, 441-42, 800 P2d 288 (1990), we concluded that, where the defendant exhausted his peremptory challenges to remove a juror whom he had challenged for cause, there was a "lack of demonstrated prejudice" because the defendant had failed to show "that the final jury panel was inappropriate in any way."[10]

Two other cases cited by defendant merely apply the principle established in *Humphrey* that an erroneous denial of a challenge for cause is not prejudicial error if the defendant does not exhaust the allotted peremptory challenges. *See Mount v. Welsh et al*, 118 Or 568, 579, 247 P 815 (1926) (stating that "[t]he rule in this jurisdiction" is that "until a defendant's peremptory challenges are exhausted, [they are] not in a position to complain of the overruling of [their] challenge for cause to any particular juror who afterwards serves on the panel"); *State v. Farrar*, 309 Or 132, 158, 800 P2d 288 (1990) (holding that, where a defendant "did not exhaust his statutory allocation" of peremptory challenges and did not establish "that any member of the jury panel that actually decided his guilt should have been excused for cause[,]" defendant has failed "to identify any prejudice that may have resulted from the ruling [on a challenge for cause] even if it were error").

Thus, none of the cases that defendant cites held that an "objectionable juror" for purposes of determining prejudicial

---

[10] *Rathie*'s characterization of a party's failure to object to any remaining jurors for cause after exhausting all peremptory challenges as a "waiver" was discarded in *Douglas*, where we stated that *Megorden* "more accurately described the reason for the rule, which is a lack of demonstrated prejudice." 310 Or at 441.

error under *Megorden* is a juror whom a party would have excused peremptorily. Although *dicta* in *Ford* suggests otherwise, no other case has adopted that position. To the contrary, our recent cases have suggested—also without expressly holding—that an "objectionable" juror for purposes of determining prejudicial error under *Megorden* is a juror who would have been excused for cause. For example, in *Douglas*, after quoting the "objectionable juror" rule in *Megorden*, we concluded that there was no prejudicial error absent a showing that "the final jury panel was inappropriate in any way." 310 Or at 442. Although we did not explain in *Douglas* what we meant by "inappropriate," we had earlier stated in *Farrar* that any error in denying a for-cause challenge was not prejudicial, in part, because defendant did not show "that any member of the jury panel that actually decided his guilt *should have been excused for cause*." 309 Or at 158 (emphasis added).

That statement suggests that an "objectionable" or "inappropriate" juror for purposes of determining prejudice is a juror who should have been excused for cause. That is what happened in *Lambert*. There, as noted above, we concluded that the trial court abused its discretion in denying the plaintiffs' challenge for cause to a juror based on his actual bias. That juror sat on the jury that decided the case because the plaintiffs had exhausted their peremptory challenges. We concluded that the trial court's error was prejudicial, because, by allowing a juror who should have been excused for cause to sit on the jury, the court "deprived [the plaintiffs] of the right to have their issues determined by an impartial juror." 277 Or at 231.

Our observation in *Farrar* and our conclusion in *Lambert* are supported by other cases that describe peremptory challenges as a tool that can be used to help avoid infringing upon a party's right to a fair trial with impartial jurors. None of those cases suggests that, when a party uses one of its allotted peremptory challenges to excuse a juror when the party might have preferred to use the challenge to excuse a different qualified juror amounts to prejudice to a substantial right. For example, we stated in *Barone* that peremptory challenges "have no constitutional significance in and of themselves." 328 Or at 72. We explained

that peremptory challenges help "guarantee the impartiality of the jury that sits on the case," but "the fact that a defendant is forced to use them to achieve an impartial jury does not offend the right to a fair trial." *Id.* at 72-73. And, as we stated in *Humphrey*, "the law has provided not only challenges for cause, but also those peremptory *to enable the defendant to protect his right to a fair and impartial jury.*" 63 Or at 545 (emphasis added). That suggests that, although a defendant certainly has a "substantial right" to a fair trial with impartial jurors, denying a defendant the opportunity to seat a juror that the defendant would prefer over another qualified juror is not prejudicial to any substantial right.[11]

That suggestion is supported by our description of the nature of peremptory challenges in *Megorden*, where we framed the issue as follows: "The simple question, after the peremptory challenges are exhausted, is: Is the jury which finally tries the case impartial?" 49 Or at 264 (internal quotation marks omitted). If so, we explained, there is no prejudicial error because "[a]ll that the [c]onstitution, all that the law, requires and demands is a trial by an impartial jury." *Id.* (internal quotation marks omitted). We further explained that "[t]he right to challenge is the right to reject, not to select, a juror. If from those who remain, an impartial jury is obtained, the constitutional right of the accused is maintained." *Id.* (quoting *Hays v. Missouri*, 120 US 68, 71, 7 S Ct 352, 30 L Ed 578 (1887)).[12]

---

[11] The conclusion that a party does not have a protected "right" to seat one qualified juror over another is supported by the well-documented abuse of peremptory challenges for racially discriminatory purposes, which led Arizona to abolish them entirely. *See* Arizona Supreme Court Order No. R-21-0020 (Aug 30, 2021) (amending rules of criminal and civil procedure to eliminate peremptory challenges); *see also Batson v. Kentucky*, 476 US 79, 102-03, 106 S Ct 1712, 90 L Ed 2d 69 (1986) (Marshall, J., concurring) ("The decision today will not end the racial discrimination that peremptories inject into the jury-selection process. That goal can be accomplished only by eliminating peremptory challenges entirely."). Other states have limited the use of peremptory challenges for the same reason. *See* Willamette University College of Law Racial Justice Task Force, *Remedying* Batson's *Failure to Address Unconscious Juror Bias in Oregon*, 57 Willamette L Rev 85 (2021) (calling for reform and describing court rules adopted in Washington and California that specify presumptively invalid reasons for exercising peremptory challenges).

[12] The *Megorden* court cited with approval its then-recent decision in *State v. White*, 48 Or 416. In *White*, we held that the trial court did not abuse its discretion in excusing two jurors for cause—and seating two new jurors—after the defendant had used all his peremptory challenges. We explained that the fact

That position is also supported by our more recent decision in *Barone*, a capital case, where we rejected the defendant's argument that the erroneous denial of his challenges for cause was prejudicial. Although the denial of those challenges resulted in the defendant using peremptory challenges "that he could have used to exclude other jurors who were objectionable to him, who did remain on the jury," he was not required to accept a juror who should have been excused for cause. 328 Or at 72. We acknowledged that, if the trial court had excused the challenged prospective jurors for cause, the defendant "would have used his peremptory challenges differently and, as a result, would have been tried by a jury with a different membership." *Id.* But, we explained, the state and federal constitutions do not give a defendant "a right to exclusive control over the composition of the trial jury." *Id.* Rather, peremptory challenges help "guarantee the impartiality of the jury that sits on the case." *Id.* Thus, although those challenges play a role in ensuring an impartial jury, they "have no constitutional significance in and of themselves, and the fact that a defendant is forced to use them to achieve an impartial jury does not offend the right to a fair trial." *Id.* at 72-73.

In summary, as explained above, an error is grounds for reversal only if the error prejudiced the appellant in respect to a substantial right.[13] Even if we presume that defendant effectively "lost" a peremptory challenge when the trial court denied his for-cause challenge to juror 155, peremptory challenges "have no constitutional

that a party had exhausted his peremptory challenges before a juror was excused for cause "invaded no right" of that party, because a peremptory challenge "is not aimed at disqualification, but is exercised upon qualified jurors *as a matter of favor to the challenger.*" *Id.* at 425 (quoting *O'Neil v. Lake Superior Iron Co.*, 67 Mich 560, 562, 35 NW 162, 163 (1887) (emphasis added)). Thus, we held that, if a party "has exercised the privilege [of peremptory challenges] to the extent given by the statute, it cannot be alleged as error that qualified jurors are afterwards drawn or placed in the panel." *Id.* The reason, we explained, is that the party's "right to have his case tried before a fair, impartial and qualified jury remains unimpaired[.]" *Id.*

[13]  In light of our conclusion that the trial court's error in denying defendant's for-cause challenge was not prejudicial in respect to a substantial right, we do not think it is necessary to remand to the Court of Appeals to consider whether the trial court abused its discretion in declining to grant defendant an additional peremptory challenge, as he asserted in his second assignment of error in the Court of Appeals.

significance in and of themselves." *Barone*, 328 Or at 72. Peremptory challenges also have no statutory significance in and of themselves other than the right to use the *number* of peremptory challenges allotted by statute.[14] Defendant's statutory right to use six peremptory challenges is a right "to reject, not to select, a juror." *Megorden*, 49 Or at 264. Thus, any error in denying defendant's for-cause challenge to juror 155 meant, at most, that defendant lost the ability to reject another qualified juror that he would have preferred to excuse from the jury. That "loss" was not prejudicial to defendant in respect to a substantial right, as required for reversal under ORS 131.035.[15]

That conclusion is consistent with our cases holding that an erroneous denial of a challenge for cause is reversible error only if a juror who decided the case was not fair and impartial. It is also consistent with the nature and purpose of peremptory challenges as a tool to help protect the fundamental right to a trial to a fair and impartial jury. Defendant does not contend that any of the jurors who decided this case were not fair and impartial. Accordingly, the trial court's error in denying defendant's challenge for cause to juror 155 was not prejudicial to defendant in respect to a substantial right.

### III.   CONCLUSION

We agree with the Court of Appeals that the trial court abused its discretion when it denied defendant's challenge for cause to juror 155 on the grounds of actual bias but conclude that that error is not grounds for reversal

---

[14] Defendant does not contend that peremptory challenges have any statutory significance in and of themselves other than as recognized in our prior cases. But as we have explained, the only statutory significance of peremptory challenges that we have recognized is the right to use the number of peremptory challenges allotted by statute.

[15] To be clear, we are not saying that the *only* right that would be considered a "substantial right" under ORS 131.035 is a right that affects a party's right to a fair trial or is otherwise constitutionally significant. Statutory rights may also be "substantial" for purposes of ORS 131.035. For example, as explained above, we held in *Walker* and in *Durham* that erroneously refusing to allow a party to exercise the number of peremptory challenges allotted by statute would be deemed prejudicial error. But an erroneous denial of a for-cause challenge is not prejudicial under ORS 131.035 where the challenged juror is excused peremptorily unless the error affected the defendant's right to a fair trial before impartial jurors.

under ORS 131.035 because it did not prejudice defendant in respect to a substantial right.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.